**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DUANE PORTER, KENNETH BLACK, RONALD BOUIE, RICKY BROWN, SAMUEL CLARK, FRANK CRADDIETH, DONALD GAYLES, and STEVE WILSON, on their own behalf and on behalf of a class of all others who are similarly situated, )))))))) | |
| *Plaintiffs,* ) | Case No. _____ |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| PIPEFITTERS ASSOCIATION LOCAL UNION 597 and the MECHANICAL CONTRACTORS ASSOCIATION OF CHICAGO, ))))) | |
| ) | |
| *Defendants.* ) | |

## CLASS ACTION COMPLAINT

The named plaintiffs, Duane Porter, Kenneth Black, Ronald Bouie, Ricky Brown, Samuel Clark, Frank Craddieth, Donald Gayles, and Steve Wilson, by their attorneys, bring this Class Action Complaint against defendant Pipefitters Association Local Union 597 for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.*; and against defendants Pipefitters Association Local Union 597 and the Mechanical Contractors Association of Chicago for violation of the Civil Rights Act of 1866, Sections 1891 and 1985(3), 42 U.S.C. §§ 1981, 1985(3), and violation of Section 301 of the Labor Management Relations Act of 1947, 28 U.S.C. § 185(a).

## THE PARTIES

1.      Defendant Pipefitters Association Local Union 597 ("Local 597" or "the union") is the largest local union within the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry. It currently has approximately 6,750 active members, about

215 of whom are black (about 3.2 percent). Its headquarters is located at 45 N. Ogden Avenue in Chicago, IL.

2.      Defendant Mechanical Contractors Association of Chicago ("MCAC") is a professional association representing Chicago-area contractors in mechanical construction. Its headquarters is located at 7065 Veterans Boulevard in Burr Ridge, IL.

3.      MCAC and Local 597 are parties to a contract that, among other things, requires MCAC members to employ only those pipefitters who are members of Local 597.

4.      Plaintiff Duane Porter is a resident of Chicago, IL. His race is black. He was a member of Local 597 from 1996 until 2011.

5.      Plaintiff Kenneth Black is a resident of Chicago, IL. His race is black. He has been a member of Local 597 since 1977.

6.      Plaintiff Ronald Bouie is a resident of Joliet, IL. His race is black. He was a member of Local 597 from 1986 until 2012.

7.      Plaintiff Ricky Brown is a resident of South Bend, IN. His race is black. He has been a member of Local 597 since 1998.

8.      Plaintiff Samuel Clark is a resident of Tomball, TX. His race is black. He has been a member of Local 597 since 1998.

9.      Plaintiff Frank Craddieth is a resident of Bellwood, IL. His race is black. He was a member of Local 597 from 1974 until 2012.

10.      Plaintiff Donald Gayles is a resident of Chicago, IL. His race is black. He was a member of Local 597 from 1974 until 1992 and from 1999 until 2007.

11.      Plaintiff Steve Wilson is a resident of Hammond, IN. His race is black. He has been a member of Local 597 since 1996.

## JURISDICTION AND VENUE

12.      This Court has federal question jurisdiction over the plaintiffs' claims pursuant to

28 U.S.C. § 1331.

13.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the

majority of the plaintiffs reside in this District, the defendants reside in this District, and a

substantial part of the events or omissions giving rise to the claims occurred in this District.

14.      The Northern District of Illinois has personal jurisdiction over the defendants

because they reside in and/or and maintain offices in this District and/or do business in Illinois.

## PROCEEDINGS IN THE EEOC

15.      Each of the plaintiffs filed timely EEOC charges against Local 597 on various

dates, the earliest being May 4, 2004. Exhibit A.

16.      On September 9, 2010, the EEOC issued determinations on the merits of each the

plaintiffs' charges, except that of Mr. Black, who filed his charge later. Exhibit B.

17.      For each of the plaintiffs save Mr. Black, the EEOC found that

[T]he evidence obtained in the investigation establishes reasonable cause to
believe that Respondent [Local 597] discriminated against a class of Black
individuals, including Charging Party, by denying them union representation and
by according them less advantageous job referrals, in violation of Title VII.

I have also determined that the evidence obtained in the investigation establishes
reasonable cause to believe that Respondent retaliated against a class of Black
individuals, including Charging Party, by according them less advantageous job
referrals for engaging in protected activity, in violation of Title VII.

*Id*.

18.      The EEOC issued Notices of Right to Sue to Mr. Porter, Mr. Bouie, Mr. Brown,

Mr. Clark, Mr. Craddieth, Mr. Gayles and Mr. Wilson on September 14, 2012 and to Mr. Black

on September 25, 2012. Exhibit C. This action is timely filed with 90 days of the issuance of the Notices.

<div align="center">

**FACTS SUPPORTING THE CLAIMS OF THE
PLAINTIFFS AND PUTATIVE CLASS MEMBERS**

</div>

19.     In order to explain the basis for the plaintiffs' and putative class members' claims in this case, it is necessary to review the long history of racial discrimination within Local 597.

20.     This history, far from being irrelevant or prejudicial, is essential to an understanding of the relationship between the plaintiffs, Local 597, the MCAC, and the discriminatory treatment that forms the basis of this lawsuit.

<div align="center">

***Early History of Pipefitters Local Union 597***

</div>

21.     Chicago's Pipefitters Local Union 597, formerly known as the Steam Fitters Protection Association Local 2 of the International Association, was organized in 1886.

22.     In 1888, responding to a massive strike by the steamfitters, a group of contractors formed the Master Steam Fitters of Chicago, later named the Mechanical Contractors Association of Chicago ("MCAC"), whose stated objective was to promote "harmonious relations" with the union.

23.     In 1892, Local 597 and the MCAC signed their first of many multi-employer collective bargaining agreements. Since that time, Local 597 and the MCAC have continued their symbiotic relationship by entering into successive Area Agreements that define the terms and conditions of employment for all Local 597 members.

24.     Historical documents show that as early as 1912, black steamfitters tried to join the then-all-white Steamfitters Local 597, only to be denied membership. Herbert Hill, *Black Labor and the American Legal System: Race, Work and the Law* 237 (1985), citing Fair

Employment Practices Commission ("FEPC") Hearings, Cook County Plumbers Union, April 4, 1942, Testimony of Edward L. Doty, pp. 9, *et seq.*

25.     In the nineteen-teens, a few black steamfitters secured jobs at some of the Chicago meat packing plants, then applied to become members of Local 597 to secure the benefits of unionized employment, but were turned away. *Id.*

26.     Black steamfitter Edward L. Doty, who testified extensively before the Fair Employment Practices Commission's hearings that were held in 1952 to document problems faced by black tradesmen, explained that "on two or three occasions we went to their meetings, and they looked out and saw our faces, and they slammed the door in our faces. We weren't permitted to come into their meetings … We knocked on the door of Local 597 of the Steamfitters … from the years 1920 to 1926, seeking to become members …. We were refused at every contact." *Id.*

27.     Denied membership in Local 597, black steamfitters organized their own labor cooperative, the Cook County Steamfitters Union, but it was not affiliated with the American Federation of Labor and was not recognized as a legitimate union by the major Chicago contracting firms, so it could do little to secure employment for the black steamfitters. Doty testified that "from 1926 to 1942 the attitude of Local[] 597 has not changed." *Id.*

28.     In 1926, Edward Doty and another black pipefitter, A.W. Dunlop, became the first fully-certified black journeyman plumbers in the state of Illinois. They established classes to teach other back tradesman who wanted to prepare for the state licensing tests and helped fifty black tradesmen secure their licenses. *Id.*

29.     But, Doty stated, "our problem was just beginning. We had our licenses, but we didn't have a union card. So we went back to [Local 597] … and they would look through this [peephole] … and the door would automatically close." *Id.*

30.     Finally, the black tradesmen had no choice but to set up the Chicago Colored Plumbers Protective Association, which was chartered by the State of Illinois in 1926. *Id.*

31.     The only contractors who would employ the black workers were minority-owned companies, which had organized themselves into the New Era Plumbing Contractors Association. No white contractors would hire the black workers. *Id.*

32.     During the Depression, Chicago, with the help of the federal government, began to build massive housing projects that necessitated many skilled laborers. The black steamfitters sought skilled work but were largely turned away. *Id.*

33.     Those jobs that were available to the black steamfitters usually consisted of low-level work, or, even worse, training white pipefitters who then replaced them as soon as they were trained. *Id.*

34.     In 1939, Local 597 enacted an agreement that placed strict limitations on the membership of black unions in the Pipe Trades Council. The agreement required black pipefitters to work exclusively for black contracting firms and only on buildings designated for black tenants. The agreement provided:

> The colored steamfitters and plumbers shall be represented in the Pipe Trades Council of Cook County, Illinois as a section of Local Union 597 and Local Union 130 [the plumber's union], United Association, by two delegates, i.e. one plumber and one steamfitter, and such colored steamfitters and plumbing contractors must be employed by colored steamfitting and plumbing contractors, and then only on such buildings as are occupied or are to be occupied by colored owners or tenants, but which building or buildings may be owned by any race of people. They shall work on a probationary working permit or card issued through the Council by Local Union 597 and Local 130 ….

*Id*. at 239.

35.     The black tradesmen realized that this proposal would place them completely at the mercy of the white unions, so they rejected the offer, and Local 597 continued to maintain its all-white membership. *Id.*

36.     In 1942, the Chicago Housing Authority implemented a quota requiring construction firms bidding for the new Cabrini Green Housing Project to give jobs to black workers in proportion to their population in the general labor pool for that particular skilled trade. As a result, black skilled workers were to be accorded 3.5 percent of the total amount paid under the contracts. *Id.* at 241-242.

37.     Even with this program, contractors, with Local 597's help, found ways to get around hiring black skilled labor. They continued to hire white skilled workers exclusively while assigning black skilled workers to the "unskilled" category, which came with lower wages and lower job security. *Id.* at 242-243.

38.     In the years between the skirmishes of the 1930s and 40s and the Civil Rights Act of 1964, little changed for black steamfitters in Chicago. Even after the landmark legislation of the 1960s was passed and blacks began to join Local 597, the union continued to thwart its black members.

39.     Local 597's website makes no mention of its black members or the battles that led to the present litigation.

40.     Instead, it congratulates itself for its uniform history of exclusion, stating that

Local 597 has enjoyed a stable history, electing only three Business Managers since 1900 when "Walking Delegates" were replaced by Business Managers. Charles Rau served his Union well for 50 years, 1901 - 1951. Martin J. Ward served as Business Manager from 1951 – 1958. Francis X. McCartin became a legend in the labor movement during his 43 years as Business Manager 1958 - 2001. The Francis X. McCartin Training Center became Chicago's first union apprenticeship training facility. Elected in 2001, James Buchanan took apprenticeship training to a new level, with the construction of a state-of-

the-art training facility in Mokena, Illinois. Through Mr. Buchanan's leadership, Local 597 has seen changes in benefits and wages that improve the quality of life for its members.

http://www.pf597.org/about/.

41.     The "legendary" aspects of Francis X. McCartin's reign at Local 597 will be more fully described below.

### *Local 597 During the Civil Rights Era*

42.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, was signed into law by President Lyndon B. Johnson in 1964, but change came slowly for Local 597.

43.     It was not until 1973, when the United States Department of Labor undertook an initiative called the Chicago Plan to address discrimination faced by minorities in the construction industry in the Chicago area, that black pipefitters were finally allowed to join Local 597 in significant numbers. *Daniels v. Pipefitters' Ass'n Local Union No.* 597, 945 F.2d 906, 910 (7th Cir. 1991).

44.     In that case, the Seventh Circuit explained that "[t]he Chicago Plan recognized that the construction industry's reliance on referrals by the construction craft unions accounted in large part for the underrepresentation of minorities:

> [M]inority workers … require action on the part of their government to ensure the enjoyment of equal employment opportunities necessitating action on a broad scale. The underutilization of minorities is due in substantial measure to the unique nature of employment practices in the construction industry where contractors and subcontractors rely on construction craft unions as their prime or sole labor source. Collective bargaining agreements and/or established custom and usage between construction contractors … and labor organizations frequently provide for or result in exclusive hiring halls .… As a result, referral by the labor organization is a virtual necessity for obtaining meaningful employment in union construction projects. Minorities have in the past and in some instances are still excluded from access to … certain construction trades. As a result of the foregoing, minority persons still do not enjoy full equal employment opportunities in the Chicago, Illinois area construction trades.

> *Daniels*, 945 F.2d at 909, fn 1.

45.     The architects of the Chicago Plan further found that the "previous efforts to correct this inequity have not been successful and that it is necessary … to adopt a specific program which will provide for equal employment opportunity in the … construction industry. *Id*.

46.     So in 1973, by a direct edict from the federal government, Local 597, which at that time had 209 black members, was forced to enter into a consent decree that required it to increase its black membership to 1,145 by 1979. *Id*. at 911.

47.     The consent decree was an abject failure. The union refused to implement it in good faith, and by 1979, there were only 443 black members – a full 702 members short of the federal goal. *Id*.

48.     After the deadline passed, the numbers of black pipefitters immediately began to fall, and by 1990, the union was back where it had started – there were only 267 black members, representing only 3.9 percent of the total membership – just slightly higher than the goal instituted in 1942 by the Chicago Housing Authority. *Daniels v. Pipefitters' Association, Local Union 597*, No 84 C 5224, Memorandum Opinion of Special Master, June 24, 1993. Exhibit D.

49.     Today, nearly forty years after the Chicago Plan was implemented, there are only 215 black members in Local 597 – almost exactly the same as in 1973.

### *The* **Daniels** *Litigation and the 1993 Injunction*

50.     A variety of lawsuits and administrative proceedings were brought by black pipefitters seeking equal access to jobs during the 1970s, 80s and 90s, with varying results.

51.     Throughout this time period, the percentage of black pipefitters remained uniformly low, and hiring procedures and the Area Agreement between Local 597 and the MCAC kept black pipefitters from being assigned to desirable jobs.

52.     In 1984, a black pipefitter named Frank Daniels, who had secured his union membership under the Chicago Plan, filed a federal lawsuit against Local 597 alleging, among other things, that the atmosphere at Local 597 was racially hostile and that that the job referral system was operated in a way that excluded black pipefitters almost entirely.

53.     After a 1988 jury trial resulted in a verdict for Mr. Daniels on Title VII and LMRA Section 301 claims (which the Seventh Circuit upheld on appeal), the judge appointed a Special Master, the Honorable Judge Frank J. McGarr, to hold hearings and develop a consent decree that would clean up the job referral process and even the playing field for black pipefitters. *Daniels v. Pipefitters' Association, Local Union 597*, No 84 C 5224, Memorandum Opinion of Special Master, June 24, 1993. Exhibit D.

54.     Judge McGarr produced a sixty-page Memorandum Opinion in which he excoriated the union for its racist practices and recommended a method to eliminate racial discrimination in the distribution of jobs. *Id*.

55.     Prior to the *Daniels* lawsuit, Local 597 assigned jobs using a dual system. The first aspect of the system was commonly known as "the Barrel." Members seeking work gathered at union headquarters and requested that their names be placed in a receptacle (the Barrel). When potential employers called in jobs, names were supposed to be drawn at random from the Barrel to fill the positions. *Id.* at 3.

56.     However, the evidence at the *Daniels* hearings showed that the Barrel was almost always bypassed or manipulated, and that jobs were distributed almost exclusively to whites. *Id*. at 10.

57.    Special Master McGarr noted that certain changes were made during the pendency of the *Daniels* litigation to make the Barrel process look more transparent, but that Local 597's behavior was "marked by delay and less than full cooperation." *Id.*

58.    For example, at a January 1992 membership meeting attended by 1,500 union members, Francis X. McCartin, then the union's Business Manager, stated that "I will put [the Barrel] in the middle of the goddamn floor! Then they'll [the black pipefitters] load it and they'll stoke it and they'll probably piss in it." *Id.* at 12.

59.    But the jobs that were distributed via the Barrel represented only a fraction of the total number of jobs distributed by the union. As Judge McGarr wrote, "the Barrel, imperfectly or perfectly operated, is not central to the race bias issue at Local 597, and to focus solely on the operation of the Barrel is to miss the real problem at the Local." *Id.* at 4.

60.    Rather, the vast majority of jobs were filled by what Judge McGarr called the "telefitter system" – a "word of mouth job referral system which by-passes the Barrel entirely." *Id.*

61.    Because blacks were not referred jobs by the almost-exclusively-white telefitter system, they were barred from the vast majority of jobs that came through Local 597. *Id.* at 4, 11.

62.    Judge McGarr concluded that in the 1980s, the telefitter system was responsible for distributing at least two-thirds of all jobs and that blacks were almost entirely excluded from the telefitter system. *Id.* at 5.

63.    Judge McGarr summarized as follows:

During a three and one-half year period from August 1988 to February 1992, black members of the union who worked actively were 2.7% of the number of journeymen but 21% of the member population using the Barrel to get jobs. The evidence reflects a situation whereby Business Agents maintain contact with major employers and learn of job opportunities. They then call pipefitters known to be seeking work and send them to the jobs. Also, pipefitters who are superintendents at the job sites call their friends

directly, or call Business Agents, to inform them of job opportunities …. The problem is that **blacks are not part of this system** and only rarely benefit from it, and in a union with a discriminatory history and an anti-black Business Manager perpetuating an already present racial animus **there is no apparent way to make the telefitter system of job assignment fair to blacks**. (Bold added.) *Id.*

64.     Judge McGarr also explained the relationship between defendants Local 597 and the MCAC. The two organizations were parties to an Area Agreement that in 1991 was amended to allow the telefitter system to run unfettered and devoid of records to document how and to whom jobs were distributed. *Id.* at 6.

65.     Judge McGarr found that Francis McCartin, the man Local 597 calls a "legend in the labor movement" on its website, was "[t]he principal fomenter of this racial animosity." McGarr noted that "the evidence reveals clearly his personal hostility to blacks in the union." *Id.* at 7.

66.     Judge McGarr noted that at the 1992 union meeting in which he said that black members would piss in the Barrel, Mr. McCartin used "innuendo and sarcasm to manipulate the audience and arouse and heighten the already latent animosity toward blacks among the members," leading the black members to fear that actual physical violence against them might break out. *Id.* at 7-8.

67.     Mr. McCartin also held a meeting shortly after Frank Daniels won his jury verdict in 1988 in which he accused "negro members" of trying to destroy the union and presided over a hostile crowd yelling racial slurs. *Id.* at pp. 11-12. That meeting ended with white union members giving Mr. McCartin a standing ovation and shouting "kill the niggers," "shoot the niggers," "let's shoot the fucker," and "let's hang the niggers." *Id.* at 13.

68.     Judge McGarr noted that "Local 597's racial practices must be viewed as a historical continuum and although the form and nomenclature of discrimination within Local 597 has changed, the substance remains the same." *Id*. at 10.

69.     As seen below, this remains true today.

70.     Experts in the *Daniels* case compiled statistics showing that between 1986 and 1991, black pipefitters worked 25 percent fewer hours than white pipefitters, all else being equal. *Id*. at 15.

71.     The impact of fewer work hours diminished black pipefitters' wages as compared to whites. In addition, because work hours were (and still are) tied directly to the accumulation of pension benefits and access to health and welfare benefits, black pipefitters earned fewer credits toward these benefits compared to whites. *Id*. at 16.

72.     Many of the black pipefitters who testified in the *Daniels* case had so few hours that they earned no credits at all toward pension or health and welfare benefits, despite their payment of the same union dues that the white pipefitters paid. *Id*.

73.     Judge McGarr also found that union members who were designated as superintendents on job sites were responsible for the hiring and firing of other union members. This allowed Local 597 superintendents – who are union members themselves – nearly unfettered power to exclude blacks from the choicest jobs. *Id*. at 20.

74.     Similarly, he found that there were no rules or methods of tracking the jobs that were distributed informally by word of mouth, outside the Barrel system. *Id*. at 24.

75.     Judge McGarr concluded that "'[t]here is no dispute that there are two referral systems, the formal system described above, and an informal system which defendant calls

"telefitter" …. The Court of Appeals held that this word of mouth network … was racially discriminatory … and I find that it continues today in basically the same manner." *Id*. at 26.

76. In sum, "… the importance and usage of the referral systems as a source for jobs has been directly caused by Local 597 and its agents, and operates to circumvent the prior findings of the jury and District Court in this matter, and has the purpose and effect of denying work to blacks." *Id*. at 27.

77. As described below, this very practice of distributing the majority of jobs via an informal referral system has recurred with the same results and now necessitates yet another lawsuit.

78. The Special Master in *Daniels* ended his memorandum with a stark summary of Local 597's racist past:

> The Court is aware that litigation over Local 597's discriminatory operation of its referral systems has been pending since 1973 …. **Local 597 is incapable of assigning jobs in a racially free manner,** because it continually reverts to its decades-old practice of word of mouth referrals, and a failure to refer blacks or to inform blacks of work available ….

*Id*. at 47 (bold added).

79. Judge McGarr then took a drastic step: recognizing that the union and the MCAC could never be trusted to run a non-discriminatory hiring system, he mandated an "exclusive hiring hall in which the union is divested of control over hiring and any participation in referrals and is mandatory to eliminate the racism, the informal word of mouth referrals almost exclusively to whites … and the chronic unemployment and disenfranchisement of black members." *Id*. at 53.

80. Rejecting softer measures, he prescribed an "out of work list" in which referrals would be distributed to those on the list in the order in which they appeared. He also assigned a

Hiring Hall Monitor to run the referral hall, keep all records, process all complaints, and make monthly reports to the court. *Id*. at 54-56.

81.     Judge McGarr recommended to the court that his appointment be renewable at one-year intervals "continuing until such time as the Court determines that in the absence of the Special Master it is reasonably certain that there will not be re-established a pattern and practice of resisting full and equal employment opportunities for blacks." *Id*. at 58.

82.     Finally, the *Daniels* court entered a **permanent injunction** against Local 597 and its agents and employees from "discriminating in the operation of its referral systems, work permit rules and apprenticeship training on the basis of race." *Id*. at 59.

### *The Failure of the* Daniels *Decree*

83.     Despite Frank Daniels' and Judge McGarr's efforts, Local 597 did not comply with the requirements of the Consent Decree, and the Court did not hold it responsible for its lapses.

84.     From the outset, Local 597 was permitted to implement a method for contractors to recall specific pipefitters by name using a form covering "recall," "emergency hires," and "supervisory hires." The union thus forced a wedge in the door of the supposedly-exclusive hiring hall that became wider and wider over time.

85.     The Hiring Hall Monitor's reports showed an alarming racial disparity with respect to these "exceptions" that quickly became the rule, with the vast majority of all "recalls," "emergency hires" and "supervisory hires" going to whites.

86.     In addition, Local 597 failed to implement a viable grievance procedure to review potential discriminatory practices and to redress those found to be true. This is still the case today.

## *Local 597's Return to the Illegal Telefitter System*

87.     Although conditions were slightly better in the years during and just after the

*Daniels* decree, black pipefitters continued to be disproportionately shut out of jobs by Local 597

throughout the 1990s and early 2000s.

88.     Black pipefitters' only means of securing work was through the hiring hall, while

most of the jobs were being referred through an "exception" or were simply passed along

informally as they had always been under the "telefitter" system.

89.     Some of the black pipefitters tried to raise new challenges in a variety of forums,

including attempting to file grievances with Local 597 (despite its lack of a viable grievance

procedure), asking for records directly from Local 597 and the union pension fund, seeking help

from the NLRB, the Department of Labor and the EEOC, and filing suits in federal court.

90.     No appreciable improvements occurred and there were no systemic changes.

91.     Beginning in May 2004, the plaintiffs in this action, and several other black

pipefitters, filed EEOC charges challenging Local 597's referral and hiring policies and alleging

retaliation for their prior complaints.

92.     The EEOC investigated these charges throughout the rest of the decade,

eventually issuing a determination that Local 597 had discriminated against and retaliated against

the Charging Parties and a class of black union members by denying them union representation

and according them less advantageous job referrals. Exhibit B.

93.     At the outset of the EEOC's investigation into these charges, the "hiring hall plus

exceptions" system of the *Daniels* decree was still in place.

94.     In its early responses to the EEOC's investigation, Local 597 argued that it no control over an employer's decision to hire a pipefitter and defended the hiring hall system as completely fair and unbiased.

95.     On January 1, 2006, in the midst of the EEOC's investigation, Local 597 and the MCAC together made their boldest move of recent years – **they entered into an agreement that returned to the telefitter system that had been declared illegal once before**.

96.     The new agreement, known as the "75/25 percent" system, is still in place today.

97.     Local 597 and the MCAC have characterized the new system as follows: 75 percent of all hires are to be made "directly by the employer" with no union participation whatsoever, and 25% are to be made via a "referral hall" that is similar to the old hiring hall and is run according to the LU 597 Referral Hall Rules of Operation. These referrals do not have to be accepted by employers, who are said to have complete responsibility for hiring decisions under both methods.

98.     The preface to the new Rules explains that "[i]n December of 2005, the Mechanical Contractors Association of Chicago and Pipe Fitters Local 597 reached an agreement on converting the current Hiring Hall into a Referral Hall. As a Referral Hall members will now have the option of finding employment on their own through direct contact with the contractor. Members who wish to sign up on the out of work list will be dispatched as contractor request forms are received following the same procedure as used in the Hiring Hall System."

99.     The union thus contends that it has decided to completely divest itself of any role in filling 75 percent of all of the jobs that are distributed to Chicago pipefitters – jobs that are, of course, only open to members of Local 597 – and also to divest itself of responsibility for the remaining 25 percent except for providing "referrals."

100.    In so doing, the union contends that it now has **absolutely no liability** for racial discrimination against black pipefitters, because it cannot control the relationship between individual union members and employers.

101.    But the union ignores a crucial fact: in practice, the superintendent or foreman in charge of the job (who is also a member of Local 597) makes the hiring decisions, assigns pipefitters their tasks, assigns overtime, and determines when to fire or even discipline those who are on the job.

102.    The Local 597 superintendent or foreman in charge of the job has little or no oversight by the company owning the job site.

103.    These superintendents and foremen thus wear "two hats" – they are acting as **both** union representatives (in that they are empowered to distribute jobs and referrals to Local 597 members) **and** employers (in that they are empowered by the contractors to do the hiring, assignments, and firing on the jobsite).

104.    The union apparently intends to take the position that when acting as superintendents or foremen on the job sites, these union members are actually "employers," so any racial discrimination that may result from their failure to hire black pipefitters is an "employer" responsibility, not a union problem.

105.    In fact, these individuals are acting as union agents because they are directly affecting the terms and conditions of employment for union members, and, as such, they have a duty to fairly represent all union members – a duty they abdicate by refusing to hire black pipefitters.

106.    The NLRB has clearly held that supervisory employees of a company cannot simultaneously hold a union position that would create divided loyalty and undermine the union.

107.     Further, Local 597 itself has a duty to fairly represent all of its members, and its decision to return to what is, in effect, a clone of the "telefitter" system that was already declared illegal is a flagrant breach of that duty with respect to black pipefitters.

108.     The union thus runs afoul the Labor Management Relations Act in that its own members are actually making hiring and firing decisions.

109.     Because 75 percent of jobs have returned to the old telefitter network, blacks are now effectively shut out of three quarters of all the jobs that pass through Local 597.

110.     As for the other 25 percent of jobs distributed by the new "referral hall," as shown below, blacks continue to receive far less than their proportional share.

111.     Black pipefitters have found that this 25 percent is the primary, if not exclusive, pool of jobs to which they have access.

112.     And many of the positions available to blacks via the referral hall are short-term or otherwise undesirable.

113.     Black pipefitters are routinely the "last hired" and "first fired" on jobs.

114.     Furthermore, black pipefitters are often called in to "clean up" a job – that is, to finish off the dregs of a large job for just a few days' work, while the white pipefitters who benefited from weeks or months of work while the job was in full swing are moved to the next long-term job.

115.     Despite its protestations that it does not control hiring by the contractors, the union orchestrates hiring decisions by contractors, always to the detriment of black pipefitters.

116.     And as noted above, even these jobs are characterized by the union as mere "referrals" that are within the discretion of the employer to either accept or reject, with the "employer" being a Local 597 member acting as a superintendent or foreman on the jobsite.

117.    Local 597 and the MCAC have set up a system in which they claim that **all** hiring decisions are the responsibility of the employers – both those in the 75 percent that are made "directly" by the contractor and those in the 25 percent that are made by "referrals," which contractors are free to either accept or disregard.

118.    Local 597 and the MCAC have thus regained absolute freedom to discriminate against black pipefitters with impunity.

### *The impact of classwide discrimination and retaliation*

119.    As a result of the defendants' practices, the named plaintiffs and putative class members were adversely impacted, including, but not limited to, the following:

    a.  Black pipefitters receive fewer work hours overall compared to white pipefitters of comparable qualifications.

    b.  Black pipefitters are disproportionately the last hired and the first fired from jobs.

    c.  When black pipefitters do receive referrals, they are disproportionately for short-term jobs or otherwise undesirable jobs.

    d.  As a result of working fewer hours, black pipefitters receive no or fewer retirement benefits than white pipefitters.

    e.  As a result of working fewer hours, black pipefitters receive no or fewer health and welfare benefits than white pipefitters.

    f.  Black pipefitters are denied the opportunity to advance to the higher-paid positions of superintendent and foreman.

    g.  Minority hiring requirements that would benefit black pipefitters are ignored.

h.  Local 597's apprentice program excludes blacks and/or disproportionately fails to properly recruit, train, retain, and graduate its black apprentices.

### *Work hours*

120.    The Area Agreement between Local 597 and the MCAC requires all contracting employers to pay the hourly rate established by a Joint Arbitration Board (which consists of five members of the union and five members of the MCAC) to all members of Local 597.

121.    That rate is currently set at $45.05 per hour, with additional compensation paid to those who are designated as superintendents and foremen.

122.    A full-time pipefitter earning $45.05 per hour would earn approximately $90,000 per year, not counting overtime (which is often available to white pipefitters in significant amounts), plus health, death and disability coverage and a substantial pension, among other benefits.

123.    With overtime, full-time pipefitters can easily make $100,000 or more per year; superintendents and foreman can make significantly more.

124.    Rather than building solid financial lives with health care and guaranteed pensions, as their white counterparts did, the plaintiffs and putative class members often earned so little that they and their families suffered severe financial distress.

125.    Hiring hall data tells a clear story about how black pipefitters were shut out of jobs. Recall that the system in place until January 1, 2006, included a hiring hall with exceptions and a gradual shift back to the informal telefitter network. Black pipefitters had to resort entirely to the hiring hall, as they were shut out of both the exceptions and the telefitter system.

126.    The hiring hall data illustrates the system's negative impact on black pipefitters.

127.    For example, in August 2002, 51.8% of black pipefitters seeking work via the hiring hall were unemployed – over half of them – compared to just 26.6% of white pipefitters seeking work via the hiring hall.

128.    In April 2003, the numbers were similarly skewed – 35.6% of blacks were unemployed, while only 19% of whites were unemployed.

129.    In April 2004, a full 70.1% of black pipefitters seeking work via the hiring hall were unemployed, compared to 51.3% of whites.

130.    In January 2005, 70.1% of blacks were still unemployed, while the white unemployment rate for those seeking jobs via the referral hall had dropped to 38.8%.

131.    Plaintiff Duane Porter entered Local 597's apprentice program in 1996. While an apprentice, Mr. Porter worked full-time, as required by the rules of the apprentice program.

132.    However, when Mr. Porter became a licensed pipefitter in 2001, he entered Local 597's Referral Hall system (and in 2006, the 75/25 system), and his access to jobs dried up. For 2001, he was able to secure only 470 hours for about six months of full-time availability. For 2002, he received only 1,122.25 hours, and for 2003, only 697.85.

133.    Between October 2003 and the summer of 2004, Mr. Porter was completely shut out of all access to jobs by Local 597. He filed an EEOC charge against Local 597 in May 2004, and the ensuing years show a pattern of discrimination and retaliation: 687 hours for 2005, 210.50 hours for 2006, 465.25 hours for 2007, 739.50 hours for 2008, 148 hours for 2009, and a mere 20 hours for 2010.

134.    Plaintiff Ricky Brown entered the apprentice program in 1993 and for five years he worked full-time as an apprentice, as required by the apprentice program. However, when he became a certified pipefitter in 1998 and entered the referral hall system, his hours nose-dived.

135.    Mr. Brown received 1,162 hours in 1999, 1,179.35 hours in 2000, 572.15 hours in

2001, 846 hours in 2002, 764.5 hours in 2003, 635.5 hours in 2004, 1,018.25 hours in 2005,

1,544.50 hours in 2006, and 565 hours in 2007 – never enough to be working full-time.

136.    Plaintiff Samuel Clark was able to travel, and through his own efforts he secured

jobs from other local pipefitter unions across the country less hostile to blacks. If he had relied

on Local 597 for work, he would have received virtually nothing. For example, in 2007, he

secured full-time work by traveling to Louisiana and Minneapolis. Local 597 jobs accounted for

only one-third of his total work hours.

137.    Plaintiff Donald Gayles became a member of Local 597 under the Chicago Plan in

1974. Despite his tenure and experience, he received so few jobs between 2000 and 2007 that he

earned only $10,179.66 in 2003 and $7,188.14 in 2004.

138.    Putative class member Anthony Moore's yearly work hours show the catastrophic

effect that the defendants' policies and procedures, and their retaliation against him for filing an

EEOC charge in 2004, had on his livelihood:

| Year | Pension hours | Year | Pension hours |
|------|---------------|------|---------------|
| 1986 | 1,152.90 | 1999 | 1,702.25 |
| 1987 | 50.00 | 2000 | 1,594.39 |
| 1988 | 347.00 | 2001 | 1,045.25 |
| 1989 | 1,123.00 | 2002 | 1,124.55 |
| 1990 | 0 | 2003 | 765.50 |
| 1991 | 343.50 | 2004 | 8.50 |
| 1992 | 1,123.00 | 2005 | 0 |
| 1993 | 403.50 | 2006 | 0 |
| 1994 | 655.00 | 2007 | 0 |
| 1995 | 500.50 | 2008 | 436.25 |
| 1996 | 911.50 | 2009 | 731.40 |
| 1997 | 1,254.60 | 2010 | 20.00 |
| 1998 | 1,931.50 | | |

139.    In the summer of 2005, Mr. Moore had been completely shut out of pipefitting jobs for nearly a year, but Local 597's summer newsletter remarked that unemployment was only around 15% overall.

140.    Plaintiff Steve Wilson, like Samuel Clark, sought jobs on his own in other parts of the country and was able to maintain relatively high work hours, compared to other black pipefitters not able to travel. However, he achieved this by searching out positions with other locals; had he relied on Local 597, he would have rapidly become destitute, as he only received a handful of jobs from Local 597 during the period 2001 to 2009.

141.    Plaintiff Ronald Bouie is an extremely skilled welder – so much so that he taught welding at Local 597's training center from 2002 to 2006. He is one of the few members of Local 597 who had earned the highest-level welding certifications. Despite this, Mr. Bouie's years as a member of Local 597 were marked by harassment (including physical attacks) by white pipefitters and denial of jobs and opportunities.

142.    Another aspect of the system in place prior to January 1, 2006 – the practice that allowed contractors to "recall" pipefitters who had worked for them before and thus bypass the hiring hall – also clearly disadvantaged black pipefitters.

143.    In March 2002, only four black pipefitters were recalled, compared to 88 whites.

144.    Similarly, in April 2004, 11 blacks were recalled, compared to 158 whites.

145.    And in November 2004, only 4 blacks were recalled, while 160 whites were.

146.    Those black pipefitters who have attempted to gain work directly from the contractors (the "75%" after January 1, 2006) have had little or no success.

147.    For example, putative class member Anthony Moore sends out dozens of requests directly to contractors on a weekly basis looking for work. He has been offered exactly one job

as a result of these efforts, which occurred in August 2012 shortly before he was scheduled to attend a mediation in his individual case pending in this court, *Moore v. Pipefitters Local 597*, No. 10-cv-7376 (N.D.Ill.).

148.     Even when black pipefitters were able to secure jobs, they were much more likely to receive short-term positions than white pipefitters.

149.     The hiring hall data tells the story. For example, in May 2002, the vast majority – nearly 80% – of white pipefitters who were working through the hiring hall were employed on jobs longer than 11 days in duration, compared to only 38.2% of working black pipefitters.

150.     In April 2004, 43.1% of white pipefitters were on long-term jobs, compared to only 21.6% of black pipefitters.

151.     Similarly, in January 2005, 58.4% of white pipefitters working via the hiring hall were on long-term assignments, while only 26.1% of blacks were.

152.     As shown, the plaintiffs were prevented from being able to earn enough to make a decent living in a profession in which they were trained and certified due to the defendants' discriminatory practices.

### *Retirement benefits*

153.     The Area Agreement between Local 548 and the MCAC requires that employing contractors contribute to a Retirement Fund, which covers approximately 6,500 active pipe fitters and 5,200 retirees and surviving spouses and currently pays out approximately $96 million per year in pension benefits.

154.     Members who receive a monthly pension are also eligible for retiree health care coverage for themselves and their families and a death benefit upon their death.

155.     To earn a "regular pension," a pipefitter must have at least 10 "pension years."

156.     The amount of the monthly payment is determined by the number of "pension credits" earned during the pipefitter's years of work.

157.     One-tenth of a pension credit is earned for each 100 hours worked. A pipefitter working 2,000 hours per year – full-time – would thus earn 2.0 pension credits for that year.

158.     The monthly amount of the Regular Pension can be as high as $76.00 for each pension credit.

159.     Pension benefits are extremely valuable. A pipefitter who worked full-time and retired at age 65 with 40 pension credits would receive $3,040 per month (40 credits x $76 = $3,040).

160.     There are other types of pensions available as well. All types rely on work hours to determine eligibility and amount.

161.     The Area Agreement between Local 597 and the MCAC also requires that employing contractors contribute $5 per work hour into each member's 401(k) Plan account.

162.     The plaintiffs and class members were denied equal access to these retirement benefits due to their lower work hours. As a result, black pipefitters have been unable to accrue pension credits at the same rate as white pipefitters, and as such, they will be disadvantaged for the rest of their lives.

163.     For example, plaintiff Duane Porter, denied jobs by the defendants' policies, was able to earn only fractions of a point for each year of work. Despite the fact that he was a member of Local 597 for sixteen years, Mr. Porter has only 3.6 years of pension credits, with 5 years of apprentice credits that will not count because he did not earn 10 regular credits.

164.     Similarly, plaintiff Ricky Brown earned only 7.1 credits in fifteen years as a Local 597 member.

165.    Putative class member Anthony Moore has been a pipefitter for thirty-one years, and in all of that time, he has only accumulated 10.70 pension credits and 4 apprentice credits.

166.    Despite his ability to work out of town, Steve Wilson still worked less than comparable white pipefitters, and after nearly 40 years of being a journeyman pipefitter, he has only 25.10 pension credits. This is enough to entitle him to $1,907.60 per month – but it is far less than the $3,000 or more available to white pipefitters who were kept employed full-time by Local 597.

### *Health and welfare benefits*

167.    The Area Agreement between Local 597 and the MCAC requires that employing contractors contribute to a Welfare Fund, which provides comprehensive health benefits, death benefits, and disability benefits, to working and retired Local 597 members and their families.

168.    Access to these health and welfare benefits is completely dependent on work hours.

169.    In order to initially become eligible for health and welfare benefits, Local 597 members must work 450 hours or more within a six month period.

170.    Once eligible, a member is covered for the remainder of the current quarter and for the entire next quarter.

171.    A member must maintain at least 375 work hours per quarter to continue coverage.

172.    If a member's hours drop below 375 for a quarter, he and his family lose their coverage.

173.    The plaintiffs and class members were denied access to health and welfare benefits due to their lower work hours.

## *Promotions*

174.    Pipefitters serving as superintendents and foreman on jobs earn between $3 and $7 more per hour than regular journeyman pipefitters.

175.    As such, being designated a superintendent or foreman adds significantly to a pipefitter's total pay – and it adds up even faster on overtime rates.

176.    There is no specific certification or training required to be a superintendent or foreman.

177.    Black pipefitters rarely have the opportunity to earn the higher pay and progress in their careers as superintendents and foremen.

178.    Highly qualified blacks are passed over in favor of underqualified whites for these positions.

179.    For example, class member Steve Wilson, who has been a member of Local 597 since the days of the Chicago Plan in the 1970s, is highly qualified to be a superintendent or foreman and has occasionally served as one. During those infrequent occasions, he has been praised for his work ethic, productivity, and handling of the crew.

180.    However, he has often been overlooked or replaced mid-job by a junior white pipefitter.

181.    Lack of access to these higher positions has cost black pipefitters money and growth opportunities.

## *Wage-Work Assessment*

182.    Local 597 currently extracts 1% from every pipefitter's paycheck. This sum, called the mandatory Wage-Work Assessment, is used to pay for union operating expenses.

183.     Among the expenses that the Wage-Work Assessment funds are attorneys' fees, settlements, and judgments in race discrimination actions brought by the plaintiffs and members of the putative class.

184.     The plaintiffs and class members' own wages have thus been used by the union in to defend against claims of race discrimination and retaliation brought by them a variety of forums, and to pay settlements and judgments for violation of anti-discrimination laws in cases in which money was awarded or agreed upon.

## CLASS ACTION ALLEGATIONS

185.     The named plaintiffs, Duane Porter, Kenneth Black, Ronald Bouie, Ricky Brown, Samuel Clark, Frank Craddieth, Donald Gayles, and Steve Wilson, bring this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of all black pipefitters who were members of Local 597 at any time from 180 days prior to the filing of the earliest of their EEOC charges to the present date.

186.     The named plaintiffs are members of the class they seek to represent.

187.     The class is so numerous that joinder of all members is impracticable. There are currently approximately 215 black members of Local 597, and the class also includes individuals who are no longer members but who were members at any time during the class period.

188.     There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members. Common questions include the following, among others:

a.   Whether the defendants' hiring and referral policies were implemented with the intent to discriminate against black pipefitters;

b. Whether the defendants' hiring and referral policies have a disparate impact on black pipefitters;

c. Whether black pipefitters receive fewer work hours overall compared to white pipefitters of comparable qualifications;

d. Whether black pipefitters disproportionately received short-term or otherwise undesirable jobs;

e. Whether black pipefitters received disproportionately smaller retirement benefits;

f. Whether black pipefitters receive disproportionately fewer health and welfare benefits than white pipefitters; and

g. Whether black pipefitters were disproportionately denied the opportunity to serve as superintendents and/or foremen.

189.    The named plaintiffs' claims are typical of the claims of the class. They, like the class members, have experienced the same discrimination and retaliation by the defendants because of their race, and they, like the class members, have suffered the same types of damages due to the loss of jobs, pension credits, health and welfare credits, and other losses.

190.    Commonality and typicality are also supported by the EEOC's determination, after six years of investigation, that the evidence obtained in the investigation established reasonable cause to believe that Local 597 discriminated and retaliated against a class of black pipefitters, including the named plaintiffs, by denying them union representation and discriminated against them by according them less advantageous job referrals, in violation of Title VII.[1]

---

[1]Administrative findings regarding claims of discrimination, while certainly not determinative of the outcome of the case or binding on the District Judge, are admissible under Federal Rule of Evidence 803(8) so long

191.     The named plaintiffs will fairly and adequately represent and protect the interests

of the members of the class. They have strong personal interests in the outcome of this action.

Some of them have been pursuing an end to discrimination at Local 597 for many years, and all

are committed to seeing this action to its conclusion. They have no conflicts of interest with

members of the class, and they will fairly and adequately protect the interests of the class.

192.     The named plaintiffs have retained counsel competent and experienced in

complex class actions and employment discrimination litigation. Counsel for plaintiffs have the

resources, expertise, and experience to prosecute this action.

193.     Here, the class seeks both monetary and injunctive relief. The Seventh Circuit has

held that it is appropriate in such cases to either certify the entire case under Rule 23(b)(3) or to

certify a Rule 23(b)(2) class for injunctive relief and a Rule 23(b)(3) class for damages. Because

the class satisfies both Rule 23(b)(3) and 23(b)(2), either course is possible here.

194.     First, class certification is appropriate pursuant to Federal Rule of Civil Procedure

23(b)(3) for determination of the monetary claims of individual class members. Rule 23(b)(3)

provides that a class can be maintained if "questions of law or fact common to the members of

the class predominate over any questions affecting only individual members, and … a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3).

195.     The primary questions common to the class are whether the defendants[2]

discriminated on the basis of race by in their hiring and referral policies and practices, whether

they retaliated against the class members when complaints were brought, and whether they failed

---

as "neither the source of information nor other circumstances indicate a lack of trustworthiness." Fed. R. Evid.
803(8)(B).
     [2]The plaintiffs seek class certification against Local 597 as to their Title VII and LMRA claims and against
both defendants as to their Section 1981 and 1985(3) claims.

to fairly represent the black members of Local 597. These questions predominate over any individual issues among the members of the proposed class.

196.     Local 597 and the MCAC also engaged in a common course of conduct –creating and implementing their referral and hiring policies and procedures that resulted in a disparate outcome for black pipefitters.

197.     The central issue of liability is thus common to the class, and a common nucleus of operative facts forms the central issue, which predominates over individualized issues of proof.

198.     Class certification under Rule 23(b)(3) is superior to other methods for fair and efficient resolution of conflict because certification will avoid the need for repeated litigation by each individual class member.

199.     Second, class certification is appropriate under F.R.C.P. 23(b)(2) regarding the plaintiffs' prayer for injunctive relief because the defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate for the class as a whole.

200.     Any resolution of these claims would, among other things, require Local 597 and the MCAC to enter into a new agreement regarding their hiring and referral procedures; as such, class-wide injunctive relief both appropriate and necessary to the resolution of this case.

<u>**FIRST CLAIM FOR RELIEF**</u>

**Race Discrimination (Disparate Treatment) in violation of
Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq*.
Brought by each of the individual plaintiffs on his own behalf
and on behalf of the putative class against Local 597**

201.     The plaintiffs reallege each of the paragraphs set forth above.

202.     Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.*

("Title VII"), mandates the following:

      **(c)**      **Labor organization practices**

It shall be an unlawful employment practice for a labor organization –

      (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

      (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

      (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

      **(d)**      **Training programs**

      It shall be an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training.

203.     Local 597 is a "labor organization" within the meaning of Title VII.

204.     A union has an affirmative duty to insure compliance with Title VII and to oppose discriminatory practices by its members, its leadership, and employers.

205.     As detailed above, Local 597 violated its obligations under Title VII: it has a long, fully-documented history of discriminating against black pipefitters and depriving its black members of opportunities because of their race.

206.     As detailed above, Local 597 implemented specific policies and procedures regarding its hiring and referral process intended to free itself from the obligation to treat black pipefitters fairly and otherwise discriminated against them.

207.     Local 597 implemented these policies knowing that the outcome would be discrimination against its black members.

208.     Local 597's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference and/or were arbitrary, discriminatory, negligent and/or in bad faith.

209.     Exemplary damages are warranted to prevent similar unlawful conduct by Local 597, which is likely to recur just as it recurred after each previous attempt to stop it.

210.     The plaintiffs were severely damaged by Local 597's conduct.

## SECOND CLAIM FOR RELIEF

**Race Discrimination (Disparate Impact) in violation of
Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq*.
Brought by each of the individual plaintiffs on his own behalf
and on behalf of the putative class against Local 597**

211.     The plaintiffs reallege each of the paragraphs set forth above.

212.     Disparate impact claims under Title VII are proven by showing that a neutral rule, even if fair on its face and objectively applied, has a significantly greater effect on the protected group.

213.     No proof of discriminatory intent is required. The plaintiffs need only prove the existence of a disparate impact on a protected group.

214.     Once a disparate impact is shown, burden shifts to the defendant to demonstrate that the practice is job related and consistent with business necessity.

215.     As detailed above, Local 597's hiring and referral policies and practices that were in place during the class period – both the modified *Daniels*-decree system and the 75/25 system – resulted in blacks securing fewer jobs, fewer total hours, fewer pension points, fewer health and welfare benefits, and fewer promotions than whites, among other things.

216.    Even if Local 597 were to argue that its referral policies and practices were a

business necessity, the plaintiffs have shown that less discriminatory referral procedures are

available – and were used, albeit imperfectly – in the past as part of the *Daniels* consent decree.

As such, any "business necessity" defense fails.

217.    The plaintiffs and putative class members were severely damaged by the impact

of Local 597's hiring and referral policies and practices.


## THIRD CLAIM FOR RELIEF

**Retaliation in violation of**
**Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.***
**Brought by each of the individual plaintiffs on his own behalf**
**and on behalf of the putative class against Local 597**

218.    The plaintiffs reallege each of the paragraphs set forth above.

219.    Title VII prohibits retaliation against anyone who engages in protected activity,

including by opposing conduct reasonably believed to be unlawful under Title VII or by

participating in an internal investigation into allegations of conduct reasonably believed to be

unlawful under Title VII.

220.    As detailed above, these plaintiffs and other members of the putative class

engaged in protected activity by opposing conduct by Local 597 that they reasonably believed

was unlawful under Title VII.

221.    Among other actions, they filed internal grievances (despite the lack of a viable

grievance procedure); they filed proceedings in the NLRB and the EEOC; and they sought

assistance from their elected representatives and the Department of Labor.

222.    Local 597 was fully aware of these protected activities, all of which are well-

documented.

223.     Local 597 retaliated against the plaintiffs and putative class members by withholding access to jobs and other benefits.

224.     Local 597's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference and/or were arbitrary, discriminatory, negligent and/or in bad faith.

225.     Exemplary damages are warranted to prevent similar unlawful conduct by Local 597, which conduct is likely to recur just as it recurred after each previous attempt to stop it.

226.     The plaintiffs and putative class members were severely damaged by Local 597's conduct.


**FOURTH CLAIM FOR RELIEF**

**Race Discrimination in violation of the**
**Civil Rights Act of 1866, Section 1891, 42 U.S.C. § 1981**
**Brought by each of the individual plaintiffs on his own behalf**
**and on behalf of the putative class against Local 597 and the MCAC**

227.     The plaintiffs reallege each of the paragraphs set forth above.

228.     Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"), provides as follows:

**a)**       **Statement of equal rights**
              All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**(b)**      **"Make and enforce contracts" defined**

              For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

**(c)    Protection against impairment**

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

229.    As detailed above, Local 597 and the MCAC denied the plaintiffs and putative class members the equal terms, conditions, benefits or privileges of employment because of their race.

230.    Local 597's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference and/or were arbitrary, discriminatory, negligent and/or in bad faith.

231.    Exemplary damages are warranted to prevent similar unlawful conduct by the defendants, which conduct is likely to recur just as it recurred after each previous attempt to stop it.

232.    The plaintiffs and putative class members were severely damaged by the defendants' conduct.

## FIFTH CLAIM FOR RELIEF

**Retaliation in violation of the
Civil Rights Act of 1866, Section 1891, 42 U.S.C. § 1981
Brought by each of the individual plaintiffs on his own behalf
and on behalf of the putative class against Local 597 and the MCAC**

233.    The plaintiffs reallege each of the paragraphs set forth above.

234.    Section 1981 also prohibits individuals from retaliating against anyone who engages in protected activity, including by opposing conduct reasonably believed to be unlawful under the Civil Rights Act of 1866.

235. As detailed above, these plaintiffs and other members of the putative class engaged in protected activity by opposing conduct by Local 597 that they reasonably believed was unlawful under Title VII.

236. Among other actions, they filed internal grievances (despite the lack of a viable grievance procedure); they filed proceedings in the NLRB and the EEOC; and they sought assistance from their elected representatives and the Department of Labor.

237. The defendants were fully aware of these protected activities, all of which are well-documented.

238. The defendants retaliated against the plaintiffs and putative class members by withholding access to jobs and other benefits.

239. Local 597's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference and/or were arbitrary, discriminatory, negligent and/or in bad faith.

240. Exemplary damages are warranted to prevent similar unlawful conduct by the defendants, which conduct is likely to recur just as it recurred after each previous attempt to stop it.

241. The plaintiffs and putative class members were severely damaged by the defendants' conduct.

### SIXTH CLAIM FOR RELIEF

**Violation of 42 U.S.C. § 1985(3)**
**Brought by each of the individual plaintiffs on his own behalf**
**and on behalf of the putative class against Local 597 and the MCAC**

242. The plaintiffs reallege each of the paragraphs set forth above.

243. 42 U.S.C. § 1985(3) holds as follows:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . (and) if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

244.    To establish the existence of a conspiracy under Section 1985(3), a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him.

245.    As detailed above, Local 597 and the MCAC engaged in a conspiracy to keep black pipefitters out of the hiring and referral system to as large an extent as possible. They did so by entering into a series of Area Agreements and Hiring/Referral Policies that they knew would exclude blacks, that had been found to exclude blacks in the past, and/or that were intended to allow them to attempt to exclude blacks.

246.    In so doing, Local 597 and the MCAC intentionally conspired to deprive the plaintiffs and putative class members of equal protection of the laws.

247.    Exemplary damages are warranted to prevent similar unlawful conduct by the defendants, which conduct is likely to recur just as it recurred after each previous attempt to stop it.

248.    The plaintiffs and putative class members were severely damaged by the defendants' conduct.

## SEVENTH CLAIM FOR RELIEF

**Violation of the Labor Management Relations Act of 1947, 29 U.S.C. § 141 *et seq*.
Brought by each of the individual plaintiffs on his own behalf
and on behalf of the putative class against Local 597**

249.    The plaintiffs reallege each of the paragraphs set forth above.

250.    The Labor Management Relations Act of 1947, 29 U.S.C. § 141, imposes a duty of fair representation on labor unions as to each of their members.

251.    A breach of the duty of fair representation is an unfair labor practice under the LMRA.

252.    The duty of fair representation includes the negotiation and administration of collective bargaining agreements that are fair to all of the union's members.

253.    Discriminatory treatment violates the duty of fair representation.

254.    As detailed above, Local 597 discriminated against the plaintiffs and putative class members by entering into agreements that excluded them from jobs and other benefits and implementing policies and procedures that both intentionally and by their operation kept blacks from getting the same opportunities as whites.

255.    Local 597 failed to represent the interests of its black members and turned a blind eye to their concerns, which they brought to union personnel repeatedly over many years, that they were unable to secure the same amount and quality of work as white members.

256.    Local 597 knew or should have known that its 75/25 system would, and did, result in shutting black pipefitters out of jobs and opportunities. Yet Local 597 implemented the system nonetheless, and it continues to maintain the system to this day.

257.    As detailed above, Local 597 also violated its duty to the plaintiffs by using their own wages to create a fund to pay race discrimination litigation, settlements and judgments.

258.    Local 597's actions are ongoing and continue to the present.

259.    Local 597's actions are willful, intentional and/or done maliciously or with callous disregard or reckless indifference and/or were arbitrary, discriminatory, negligent and/or in bad faith.

260.     Exemplary damages are warranted to prevent similar unlawful conduct by the defendants, which conduct is likely to recur just as it recurred after each previous attempt to stop it.

261.     The plaintiffs and putative class members were severely damaged by the defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs, Duane Porter, Kenneth Black, Ronald Bouie, Ricky Brown, Samuel Clark, Frank Craddieth, Donald Gayles, and Steve Wilson, on behalf of themselves and the class they seek to represent, pray for relief as to all counts of this Class Action Complaint as follows:

A.     An order declaring that Local 597 violated Title VII, Sections 1981 and 1985(3), the LMRA;

B.     An order declaring that the MCAC violated Section 1981 and 1985(3);

C.     An order enjoining future violations by either defendant;

D.     Injunctive relief sufficient to eliminate race discrimination by Local 597 and the MCAC, including with respect to job referrals, hiring, firing, discipline, overtime, promotions, the apprenticeship program, and any other policies and practices that were deemed discriminatory;

E.     Payment of all costs of implementing such injunctive relief;

F.     Payment of the plaintiffs' and putative class members lost past and future wages and bonuses (including overtime), pension benefits, health and welfare benefits, and any other income and/or monetary or monetized benefits of employment that they would have been entitled to absent the discrimination;

G.      All other compensatory and consequential damages proven by the plaintiffs and putative class members;

H.      Punitive damages sufficient to punish Local 597 and the MCAC for their years of discrimination and to deter future discriminatory conduct;

I.      Payment of the plaintiffs' and putative class members' attorneys' fees and all costs of litigation (including any expert witness fees);

J.      Pre-and post-judgment interest; and

K.      All other and relief, whether legal or equitable, that the Court may deem appropriate.

## JURY DEMAND

The plaintiffs demand a trial by jury on all issues so triable.

Electronically Filed on December 10, 2012                Respectfully submitted,


                                                         /s/ Jamie S. Franklin
                                                         *For the Plaintiffs and the Putative Class*

Jamie S. Franklin, ARDC No. 6242916
THE FRANKLIN LAW FIRM LLC
53 W. Jackson Blvd., Ste. 803
Chicago, IL 60604
(312) 662-1008
(312) 662-1015 (fax)
jsf@thefranklinlawfirm.com

Wesley E. Johnson, ARDC No. 6225257
Jessica Tovrov, ARDC No. 0620466
Gabriel Hardy
GOODMAN LAW OFFICES LLC
105 W. Madison St., Ste. 1500
Chicago, IL 60602
(312) 752-4828
(312) 264-2535 (fax)
wjohnson@wesleyjohnsonlaw.com

# Exhibit A

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | **Amended** |
| ☒ EEOC | **210-2004-04708** |

_____ Illinois Department Of Human Rights _____ and EEOC

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Duane L. Porter** | **(708) 704-3249** | **12-02-1956** |

| Street Address | City, State and ZIP Code |
|---|---|
| **12248 S. Gregrory St.,Apt.3d,  Blue Island, IL 60406** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **PIPE FITTERS' LOCAL #597** | **7800** | **(312) 829-4191** |

| Street Address | City, State and ZIP Code |
|---|---|
| **45 N. Ogden Ave.,  Chicago, IL 60607** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| **07-17-2003** | **05-12-2004** |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I.     I have been a Respondent Union member since 1996.  I am a Pipe Fitter.  I have not been recalled for work since October 8, 2003.  Respondent is discriminating against me and other Black members through its manipulation of its hiring/referral/recall list.  Respondent is recalling non-Black members prior to recalling Black members who have been off work for greater periods of time.  Respondent is allowing contractors to recall non-Black members prior to recalling Black members who should be recalled first based on their length of time on layoff.

II.     I believe that Respondent has discriminated against me on the basis of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

### (See Attached)

AUG - 2 2004

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| *7-22-04*  **May 12, 2004**     *Duane Leonardo Porter*  Date                  Charging Party Signature | SIGNATURE OF COMPLAINANT   SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year )* |

Charge No. 210-2004-04708 Amendment
Porter v. Pipefitters'Assocation #597

III. A. ISSUE/BASIS

LACK OF REPRESENTATION

B. PRIMA FACIE ALLEGATIONS

1. L.U. #597 has no formal grievance procedure within the union hall or on the Jobsite. L.U. #597's Officers are the source of the complaints, it does no good to complain to them. On the job L.U. #597, to my knowledge, has never had a union steward.

*Duane Leonardo Porter* 7/22/04

Charge No. 210-2004-04708 Amendment
Porter v. Pipefitters' Assocation #597

I. A. ISSUE/BASIS

FAILURE TO REFER, HIRE, OR RECALL, ACCORDING TO A
FEDERALLY MANDATED OUT-OF-WORK LIST, BECAUSE OF
MY RACE, AFRO-AMERICAN.

B. PRIMA FACIE ALLEGATIONS

1. My race is Afro-American.

2. I am a Journeyman Pipefitter, and a member in good standing. I began my
Apprenticeship training in 1996.

3. Since October 2003, after being laid off from my last job, L.U. #597's
Officers and members have failed to refer, hire, or recall, me because of my
race, Afro-American. I am being treated in a disparate manner, while similarly
qualified white union members are being referred, hired, retained, and recalled,
I am not.

4. Implementation of the present hiring system by L.U. 597's Officers and
Members has a negative disparate impact on myself and similarly situated Afro-
American union members.

II. A. ISSUE/BASIS

FAILURE TO REFER, HIRE, OR RECALL, ACCORDING TO A
FEDERALLY MANDATED OUT-OF-WORK LIST, IN RETALIATION FOR
HAVING FILED A CHARGE OF DISCRIMINATION IN THE PAST, FOR
BEING AN ADVOCATE FOR CHANGE, AND FOR BEING A MEMBER
OF A FEDERALLY PROTECTED CLASS.

B. 1. L.U. #597's Officers and Members have continued a pattern and practice of
retaliation against myself and other Afro-American Members who have filed
charges of discrimination in the past. Being an advocate for change, and/or
being a member of a federally protected group has caused disparate impact on
Myself and similarly situated Afro-American Members.

2. Protection from discrimination was granted by the federal courts, and
Administered by F.B.I. agent William Clancy (hiring hall monitor). Mr. Clancy
left this position in 1998. _Duane Leonardr Porter_ 7/22/04

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 440-2011-00438 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|

State or local Agency, if any

Name (Indicate Mr., Ms., Mrs.)
**Kenneth Black**

Home Phone (Incl. Area Code)
**(312) 437-0767**

Date of Birth
**02-06-1950**

Street Address — City, State and ZIP Code
**5000 S. South Shore Dr., Apt 1803, Chicago, IL 60637**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

Name
**PIPEFITTER ASSOCIATION LOCAL 597**

No. Employees, Members
**201 - 500**

Phone No. (Include Area Code)
**(312) 829-4191**

Street Address — City, State and ZIP Code
**45 North Ogden Avenue, Chicago, IL 60707**

Name

No. Employees, Members

Phone No. (Include Area Code)

Street Address — City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest — Latest
**10-27-2010**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have been union member in good standing with the above named Respondent since 1977. During my employment, have been denied job referrals to work as a pipefitter, whereas non-black employees are referred to jobs.

I believe that I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

**RECEIVED EEOC**

**OCT 2 9 2010**

**CHICAGO DISTRICT OFFICE**

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

Oct 29, 2010 — Kennett M Black
Date — Charging Party Signature

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2009-03546 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Ronald Bouie** | **(815) 774-0102** | **09-22-1958** |

Street Address / City, State and ZIP Code
**16940 Spencer Rd., Joliet, IL 60433**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **PIPEFITTER'S ASSOC #597** | **500 or More** | **(312) 829-4191** |

Street Address / City, State and ZIP Code
**45 N. Ogden Ave., Chicago, IL 60607**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address / City, State and ZIP Code

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER (Specify below.) | Earliest / Latest **03-24-2009**<br>☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have been a Journeyman Pipefitter with Respondent since 1986. During my membership, Respondent has referred me to fewer jobs than non-Black Pipefitters.

I believe that I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

MAR 2 0 2009

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 3-26-09    Ronald E. Bouie<br>Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 440-2007-06432 |

**Illinois Department Of Human Rights** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Ricky L. Brown** | **(312) 375-1457** | **03-21-1962** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2200 E 97th, Chicago, IL 60617** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **PIPEFITTERS LOCAL #597** | **500 or More** | **(312) 829-4191** |

| Street Address | City, State and ZIP Code |
|---|---|
| **45 N. Ogden Ave., Chicago, IL 60607** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **09-01-1998** | **07-18-2007** |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I became a Journeyman with Respondent in September 1998. During my membership, I have been subjected to different terms and conditions of employment and have been denied representation.

I believe that I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

JUL 18 2007

CHICAGO DISTRICT OFC

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Jul 18, 2007**     *Ricky L. Brown*  Date                 Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (5/01)

 

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 210-2005-02862 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| **Samuel R. Clark** | **(832) 489-9006** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **P.O. Box 191  Wilmington, IL 60481** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **PIPEFITTER LOCAL 597** | **101 - 200** | **(312) 829-4191** |

| Street Address | City, State and ZIP Code |
|---|---|
| **45 N Ogden Ave,  Chgo, IL 60606** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **01-01-2002**  Latest **02-17-2005**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Since 1998, I have been a Journeyman Pipefitter and a member in good standing with the above named Respondent. Since 2002 and continuing, Respondent's officers and members have failed to refer, hire or recall me because of my race, Black. I am being treated in a disparate manner, while similarly qualified non-Black union members are being referred, hired and retained, and recalled and I am not. Implementation of the present hiring system by Respondent's officers and members has a disparate impact on myself and similarly situated Black members.

I believe that I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

FEB 1  2005

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Feb 17, 2005**  *Date*  *Samuel R. Clark*  *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | **Amended** |
| ☒ EEOC | **210-2004-04706** |

**Illinois Department Of Human Rights** and EEOC

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Frank O. Craddieth** | **(708) 547-8293** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **701 23rd Avenue, Bellwood, IL 60104** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **PFA #597** | **500 or More** | **(312) 829-4191** |

| Street Address | City, State and ZIP Code |
|---|---|
| **Pipe Fitters' Association, 45 North Ogden, Chicago, IL 60607** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **10-01-2003** | **05-12-2004** |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I have been a member of Respondent association since August 1974. I am a Pipe Fitter. I have not been recalled for work by Respondent since October 2003. Respondent is discriminating against me and other Black members through its manipulation of its hiring list. Respondent is recalling and allowing contractors to recall non-Black members prior to the recall of Black members who have been off work for greater periods of time.

I believe that I have been discriminated against on the basis of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

**See Attached**

AUG 1 0 2004

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **May 12, 2004**          *Frank O. Craddieth*   Date               Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year )* |

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | **Amended** |
| ☒ EEOC | **210-2004-04707** |

**Illinois Department Of Human Rights**

State or local Agency, if any                                        and EEOC

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| **Mr. Donald Gayles** | **(773) 224-4582** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **350 East 74th Street, Chicago, IL 60619** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **PFA #597** | **500 or More** | **(312) 829-4191** |

| Street Address | City, State and ZIP Code |
|---|---|
| **Pipe Fitters' Association, 45 North Ogden, Chicago, IL 60607** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

[X] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN
[X] RETALIATION   [ ] AGE   [ ] DISABILITY   [ ] OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **06-01-2003**   Latest: **05-12-2004**

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have been a member of Respondent association since August 1974. I am a Pipe Fitter. I have not been recalled for work since June 2003. Respondent is discriminating against me and other Black members through its manipulation of its hiring list. Respondent is recalling and allowing contractors to recall non-Black members prior to the recall of Black members who have been off work for greater periods of time.

I believe that I have been discriminated against on the basis of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

**(See Attached)**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **May 12, 2004** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date                Charging Party Signature | |



AUG - 2 2004

Charge No. 210-2004-04707 Amendment
Gayles v. Pipefitters'Assocation #597

I.  A.  ISSUE/BASIS

FAILURE TO REFER, HIRE, OR RECALL, ACCORDING TO A
FEDERALLY MANDATED OUT-OF-WORK LIST, BECAUSE OF
MY RACE, AFRO-AMERICAN.

B.  PRIMA FACIE ALLEGATIONS

1. My race is Afro-American.

2. I am a Journeyman Pipefitter, and a member in good standing. I began my
Apprenticeship training in 1974..

3. Since June, 2003, after being laid off from my last job, L.U. #597's
Officers and members have failed to refer, hire, or recall, me because of my
race,Afro-American. I am being treated in a disparate manner, while similarly
qualified white union members are being referred, hired, retained, and recalled,
I am not.

4. Implementation of the present hiring system by L.U. 597's Officers and
Members has a negative disparate impact on myself and similarly situated Afro-
American union members.

II.  A.  ISSUE/BASIS

FAILURE TO REFER, HIRE, OR RECALL, ACCORDING TO A
FEDERALLY MANDATED OUT-OF-WORK LIST, IN RETALIATION FOR
HAVING FILED A CHARGE OF DISCRIMINATION IN THE PAST, FOR
BEING AN ADVOCATE FOR CHANGE, AND FOR BEING A MEMBER
OF A FEDERALLY PROTECTED CLASS.

B.  1. L.U. #597's Officers and Members have continued a pattern and practice of
retaliation against myself and other Afro-American Members who have filed
charges of discrimination in the past. Being an advocate for change, and/or
being a member of a federally protected group has caused disparate impact on
Myself and similarly situated Afro-American Members.

2. Protection From discrimination was granted by the federal courts, and
Administered by F.B.I. agent William Clancy (hiring hall monitor). Mr. Clancy
left this position in 1998. *Daniel Gayles* 2004 July 28

Charge No. 210-2004-04707 Amendment
Gayles v. Pipefitters' Assocation #597

III. A. ISSUE/BASIS

LACK OF REPRESENTATION

B. PRIMA FACIE ALLEGATIONS

1. L.U. #597 has no formal grievance procedure within the union hall or on the Jobsite. L.U. #597's Officers are the source of the complaints, it does no good to complain to them. On the job L.U. #597, to my knowledge, has never had a union steward.

_Samuel Gayles_ July 28 2004

 

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 210-2005-02858 |

**Illinois Department Of Human Rights** and EEOC

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Steve M. Wilson** | **(219) 512-3862** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **827 Becker St Hammond, IN 46320** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **PIPEFITTER LOCAL 597** | **101 - 200** | **(000) 829-4191** |

| Street Address | City, State and ZIP Code |
|---|---|
| **45 N Ogden Ave, Chgo, IL 60606** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** *(Check appropriate box(es).)*

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **01-01-2001** | **02-17-2005** |
| ☒ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am a Journeyman member in good standing with the above named Respondent since 1974. Since 2001 and continuing, Respondent's officers and members have failed to refer, hire, or recall, me because of my race, Black. I am being treated in a disparate manner, while similarly qualified non-Black union members are being referred, hired, retained, and recalled and I am not. Implementation of the present hiring system by Respondent's officers and members has a disparate impact on myself and similarly situated African-American union members.

I believe that I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

FEB 1 7 2005

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Feb 17, 2005** *Date* — *Steve M. Wilson* *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

# Exhibit B



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Chicago District Office

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 353-2713
TTY: (312) 353-2421
ENFORCEMENT FAX: (312) 886-1168

CHARGE NUMBER                                    210-2004-04708


Duane Porter                                     Charging Party
12248 South Gregory Street
Apartment 3D
Blue Island, Illinois 60406


Pipefitters Local #597                           Respondent
45 North Ogden Avenue
Chicago, Illinois 60607


## DETERMINATION

Under the authority vested in me by the Commissions Procedural Regulations, I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended, (Title VII).

Respondent is an entity within the meaning of Title VII and all requirements for coverage have been met.

Charging Party alleges that he and a class of individuals were discriminated against based on their race, Black, in that they were denied union representation and were provided fewer job referrals, and in violation of Title VII.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated against a class of Black individuals, including Charging Party, by denying them union representation and by according them less advantageous job referrals, in violation of Title VII.

I have also determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent retaliated against a class of Black individuals, including Charging Party, by according them less advantageous job referrals for engaging in protected activity, in violation of Title VII.

This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, I invite the parties to join with the Commission in reaching a just resolution of this matter. Disclosure of information obtained by the Commission during the conciliation process will be made only in accordance with the Commission's Procedural Regulations (29 CFR Part 1601.26).

If Respondent wishes to accept this invitation to participate in conciliation efforts, they may do so at this time by proposing terms for a conciliation agreement; that proposal should be provided to the Commission representative within 14 days of the date of this determination. The remedies for violations of the statutes we enforce are designed to make the identified victims whole and to provide corrective and preventive relief. These remedies may include, as appropriate, an agreement by Respondent to not engage in unlawful employment practices, placement of identified victims in positions they would have held but for discriminatory actions, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation and the resolution of the claim.

Should Respondent have further questions regarding the conciliation process or the conciliation terms they would like to propose, we encourage them to contact the assigned Commission representative. Should there be no response from Respondent in 14 days, we may conclude that further conciliation efforts would be futile or nonproductive.

On behalf of the Commission:

_9/9/10_
Date

_John P. Rowe_
John P. Rowe
District Director



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Chicago District Office

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 353-2713
TTY: (312) 353-2421
ENFORCEMENT FAX: (312) 886-1168

CHARGE NUMBER                                     440-2009-03546

Ronald Bouie                                                      Charging Party
16940 Spencer Road
Joliet, Illinois 60433

Pipefitters Local #597                                            Respondent
45 North Ogden Avenue
Chicago, Illinois 60607

## <u>DETERMINATION</u>

Under the authority vested in me by the Commissions Procedural Regulations, I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended, (Title VII).

Respondent is an entity within the meaning of Title VII and all requirements for coverage have been met.

Charging Party alleges that he was discriminated against based on his race, Black, in that he has been provided fewer job referrals, in violation of Title VII.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated against a class of Black individuals, including Charging Party, by denying them union representation and by according them less advantageous job referrals, in violation of Title VII.

I have also determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent retaliated against a class of Black individuals, including Charging Party, by according them less advantageous job referrals for engaging in protected activity, in violation of Title VII.

This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate the alleged unlawful practices by informal methods of conciliation.



Therefore, I invite the parties to join with the Commission in reaching a just resolution of this matter. Disclosure of information obtained by the Commission during the conciliation process will be made only in accordance with the Commission's Procedural Regulations (29 CFR Part 1601.26).

If Respondent wishes to accept this invitation to participate in conciliation efforts, they may do so at this time by proposing terms for a conciliation agreement; that proposal should be provided to the Commission representative within 14 days of the date of this determination. The remedies for violations of the statutes we enforce are designed to make the identified victims whole and to provide corrective and preventive relief. These remedies may include, as appropriate, an agreement by Respondent to not engage in unlawful employment practices, placement of identified victims in positions they would have held but for discriminatory actions, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation and the resolution of the claim.

Should Respondent have further questions regarding the conciliation process or the conciliation terms they would like to propose, we encourage them to contact the assigned Commission representative. Should there be no response from Respondent in 14 days, we may conclude that further conciliation efforts would be futile or nonproductive.

On behalf of the Commission:

_9/9/10_

Date

John P. Rowe

John P. Rowe
District Director



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Chicago District Office

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 353-2713
TTY: (312) 353-2421
ENFORCEMENT FAX: (312) 886-1168

CHARGE NUMBER                                   440-2007-06432

Ricky Brown                                       Charging Party
2200 East 97th Street
Chicago, Illinois 60617

Pipefitters Local #597                               Respondent
45 North Ogden Avenue
Chicago, Illinois 60607

## DETERMINATION

Under the authority vested in me by the Commissions Procedural Regulations, I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended, (Title VII).

Respondent is an entity within the meaning of Title VII and all requirements for coverage have been met.

Charging Party alleges that he was discriminated against based on his race, Black, in that he was denied union representation and was provided fewer job referrals, in violation of Title VII.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated against a class of Black individuals, including Charging Party, by denying them union representation and by according them less advantageous job referrals, in violation of Title VII.

I have also determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent retaliated against a class of Black individuals, including Charging Party, by according them less advantageous job referrals for engaging in protected activity, in violation of Title VII.

This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, I invite the parties to join with the Commission in reaching a just resolution of this

Charge 440-2007-06432
page 2

matter.  Disclosure of information obtained by the Commission during the conciliation process
will be made only in accordance with the Commission's Procedural Regulations (29 CFR Part
1601.26).

If Respondent wishes to accept this invitation to participate in conciliation efforts, they may do
so at this time by proposing terms for a conciliation agreement; that proposal should be provided
to the Commission representative within 14 days of the date of this determination.  The remedies
for violations of the statutes we enforce are designed to make the identified victims whole and to
provide corrective and preventive relief.  These remedies may include, as appropriate, an
agreement by Respondent to not engage in unlawful employment practices, placement of
identified victims in positions they would have held but for discriminatory actions, back pay,
restoration of lost benefits, injunctive relief, compensatory and/or punitive damages,
and notice to employees of the violation and the resolution of the claim.

Should Respondent have further questions regarding the conciliation process or the conciliation
terms they would like to propose, we encourage them to contact the assigned Commission
representative.  Should there be no response from Respondent in 14 days, we may conclude that
further conciliation efforts would be futile or nonproductive.


On behalf of the Commission:


___9/9/10___
Date

_John P. Rowe_
John P. Rowe
District Director



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Chicago District Office

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 353-2713
TTY: (312) 353-2421
ENFORCEMENT FAX: (312) 886-1168

CHARGE NUMBER                                      210-2005-02862


Samuel Clark                                      Charging Party
PO Box 191
Wilmington, Illinois 60481


Pipefitters Local #597                            Respondent
45 North Ogden Avenue
Chicago, Illinois 60607


## DETERMINATION

Under the authority vested in me by the Commissions Procedural Regulations, I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended, (Title VII).

Respondent is an entity within the meaning of Title VII and all requirements for coverage have been met.

Charging Party alleges that he and a class of individuals were discriminated against based on their race, Black, in that they were denied union representation and were provided fewer job referrals, in violation of Title VII.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated against a class of Black individuals, including Charging Party, by denying them union representation and by according them less advantageous job referrals, in violation of Title VII.

I have also determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent retaliated against a class of Black individuals, including Charging Party, by according them less advantageous job referrals for engaging in protected activity, in violation of Title VII.

This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate the alleged unlawful practices by informal methods of conciliation.

Therefore, I invite the parties to join with the Commission in reaching a just resolution of this matter. Disclosure of information obtained by the Commission during the conciliation process will be made only in accordance with the Commission's Procedural Regulations (29 CFR Part 1601.26).

If Respondent wishes to accept this invitation to participate in conciliation efforts, they may do so at this time by proposing terms for a conciliation agreement; that proposal should be provided to the Commission representative within 14 days of the date of this determination. The remedies for violations of the statutes we enforce are designed to make the identified victims whole and to provide corrective and preventive relief. These remedies may include, as appropriate, an agreement by Respondent to not engage in unlawful employment practices, placement of identified victims in positions they would have held but for discriminatory actions, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation and the resolution of the claim.

Should Respondent have further questions regarding the conciliation process or the conciliation terms they would like to propose, we encourage them to contact the assigned Commission representative. Should there be no response from Respondent in 14 days, we may conclude that further conciliation efforts would be futile or nonproductive.

On behalf of the Commission:

_9/9/10_
Date

John P. Rowe
John P. Rowe
District Director



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 353-2713
TTY: (312) 353-2421
ENFORCEMENT FAX: (312) 886-1168

CHARGE NUMBER

210-2004-04707

Donald Gayles
12500 South Lincoln Street
Apartment 10
Calumet Park, Illinois 60827

Charging Party

Pipefitters Local #597
45 North Ogden Avenue
Chicago, Illinois 60607

Respondent

## DETERMINATION

Under the authority vested in me by the Commissions Procedural Regulations, I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended, (Title VII).

Respondent is an entity within the meaning of Title VII and all requirements for coverage have been met.

Charging Party alleges that he and a class of individuals were discriminated against based on their race, Black, in that they were denied union representation and were provided fewer job referrals, in violation of Title VII.

In addition, CP alleges that he was denied referrals in retaliation for engaging in protected activity, in violation of Title VII.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated against a class of Black individuals, including Charging Party, by denying them union representation and by according them less advantageous job referrals, in violation of Title VII.

I have also determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent retaliated against a class of Black individuals, including Charging Party, by according them less advantageous job referrals for engaging in protected activity, in violation of Title VII.

This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, I invite the parties to join with the Commission in reaching a just resolution of this matter. Disclosure of information obtained by the Commission during the conciliation process will be made only in accordance with the Commission's Procedural Regulations (29 CFR Part 1601.26).

If Respondent wishes to accept this invitation to participate in conciliation efforts, they may do so at this time by proposing terms for a conciliation agreement; that proposal should be provided to the Commission representative within 14 days of the date of this determination. The remedies for violations of the statutes we enforce are designed to make the identified victims whole and to provide corrective and preventive relief. These remedies may include, as appropriate, an agreement by Respondent to not engage in unlawful employment practices, placement of identified victims in positions they would have held but for discriminatory actions, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation and the resolution of the claim.

Should Respondent have further questions regarding the conciliation process or the conciliation terms they would like to propose, we encourage them to contact the assigned Commission representative. Should there be no response from Respondent in 14 days, we may conclude that further conciliation efforts would be futile or nonproductive.

On behalf of the Commission:

_9/9/10_
Date

_John P. Rowe_
John P. Rowe
District Director



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Chicago District Office

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 353-2713
TTY: (312) 353-2421
ENFORCEMENT FAX: (312) 886-1168

CHARGE NUMBER                                                210-2005-02858

**RECEIVED EEOC**

Steve Wilson                                                 Charging Party
827 Becker Street                        OCT 2 0 2010
Hammond, Indiana 46320

**CHICAGO DISTRICT OFFICE**

Pipefitters Local #597                                       Respondent
45 North Ogden Avenue
Chicago, Illinois 60607

## DETERMINATION

Under the authority vested in me by the Commissions Procedural Regulations, I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended, (Title VII).

Respondent is an entity within the meaning of Title VII and all requirements for coverage have been met.

Charging Party alleges that he and a class of individuals were discriminated against based on their race, Black, in that they were denied union representation and were provided fewer job referrals, in violation of Title VII.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated against a class of Black individuals, including Charging Party, by denying them union representation and by according them less advantageous job referrals, in violation of Title VII.

I have also determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent retaliated against a class of Black individuals, including Charging Party, by according them less advantageous job referrals for engaging in protected activity, in violation of Title VII.

This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, I invite the parties to join with the Commission in reaching a just resolution of this matter. Disclosure of information obtained by the Commission during the conciliation process will be made only in accordance with the Commission's Procedural Regulations (29 CFR Part 1601.26).

If Respondent wishes to accept this invitation to participate in conciliation efforts, they may do so at this time by proposing terms for a conciliation agreement; that proposal should be provided to the Commission representative within 14 days of the date of this determination. The remedies for violations of the statutes we enforce are designed to make the identified victims whole and to provide corrective and preventive relief. These remedies may include, as appropriate, an agreement by Respondent to not engage in unlawful employment practices, placement of identified victims in positions they would have held but for discriminatory actions, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation and the resolution of the claim.

Should Respondent have further questions regarding the conciliation process or the conciliation terms they would like to propose, we encourage them to contact the assigned Commission representative. Should there be no response from Respondent in 14 days, we may conclude that further conciliation efforts would be futile or nonproductive.

On behalf of the Commission:

9/9/10
Date

John P. Rowe
District Director

# Exhibit C



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
(312) 869-8010
TTY (312) 869-8001
FAX (312) 869-8220

Duane Porter
12248 South Gregory Street, Apt. 3D
Blue Island, IL 60406

Re: Respondent: Pipefitters Local #597
EEOC Charge No.: 210-2004-04708 AMENDED

Dear Mr. Porter:

Attached please find a Notice of Right to Sue issued on your behalf in the above referenced matter. The Commission's efforts to conciliate this matter with Respondent have been unsuccessful. The Commission has determined that it will not bring a lawsuit against the Respondent. By issuing the attached Notice of Right to Sue, the Commission is terminating its processing of your charge.

The attached Notice of Right to Sue entitles you to pursue private litigation concerning your allegations against Respondent(s) within 90 days of your receipt of this letter. You may wish to retain a private attorney at this time. The Commission maintains a list of attorneys who have indicated an interest in pursuing cases involving employment discrimination. This list is attached for your convenience.

If you do file suit based on these Notice of Right to Sue, it is requested that you provide us with a copy of the complaints you file in court.

On Behalf of the Commission:

_9/14/12_
Date

John P. Rowe
District Director

Enclosures

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE
## (CONCILIATION FAILURE)

| | |
|---|---|
| To: Duane L. Porter<br>12248 South Gregory Street, Apt.3D<br>Blue Island, IL 60406 | From: Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210-2004-04708 | Nanisa Strickler,<br>Enforcement Supervisor | (312) 869-8137 |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
#### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

John P. Rowe,
District Director

9/14/12
(Date Mailed)

cc:   **PIPE FITTERS LOCAL #597**

SEP 2 4 2012
CHICAGO DISTRICT OFFICE

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: **Kenneth Black**
**5242 South Hyde Park Blvd., Apt. 609**
**Chicago, IL 60615**
312.437-0767
Email. DjavanSalsa.yahoo.com

From: **Chicago District Office**
**500 West Madison St**
**Suite 2000**
**Chicago, IL 60661**

On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2011-00438 | **Teresa Napier,**<br>**Investigator Support Asst** | **(312) 869-8138** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[  ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[  ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[  ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[  ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ X ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[  ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nond scrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

John P. Rowe,

9/25/12
(Date Mailed)

Enclosures(s)

**John P. Rowe,**
**District Director**

cc: **PIPEFITTER ASSOCIATION LOCAL 597**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
(312) 869-8010
TTY (312) 869-8001
FAX (312) 869-8220

Ronald Bouie
16940 Spencer Road
Joliet, IL 60433

<div style="margin-left:2em">

Re: Respondent: <u>Pipefitters Local #597</u>
EEOC Charge No.: 440-2009-03546

</div>

Dear Mr. Bouie:

Attached please find a Notice of Right to Sue issued on your behalf in the above referenced matter. The Commission's efforts to conciliate this matter with Respondent have been unsuccessful. The Commission has determined that it will not bring a lawsuit against the Respondent. By issuing the attached Notice of Right to Sue, the Commission is terminating its processing of your charge.

The attached Notice of Right to Sue entitles you to pursue private litigation concerning your allegations against Respondent(s) within 90 days of your receipt of this letter. You may wish to retain a private attorney at this time. The Commission maintains a list of attorneys who have indicated an interest in pursuing cases involving employment discrimination. This list is attached for your convenience.

If you do file suit based on these Notice of Right to Sue, it is requested that you provide us with a copy of the complaints you file in court.

On Behalf of the Commission:

_9/14/12_
Date

_John P. Rowe_
John P. Rowe
District Director

Enclosures

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE
*(CONCILIATION FAILURE)*

| | | | |
|---|---|---|---|
| To: | Ronald Boule<br>16940 Spencer Road<br>Joliet, IL 60433 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |

☐    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2009-03546 | Nanisa Strickler,<br>Enforcement Supervisor | (312) 869-8137 |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*John P. Rowe,*
**John P. Rowe,**
**District Director**

9/14/12
*(Date Mailed)*

cc:    **PIPEFITTERS LOCAL 597**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
(312) 869-8010
TTY (312) 869-8001
FAX (312) 869-8220

Ricky L. Brown
2404 Arrowhead Circle, Building 28
South Bend, IN 46628

     Re: Respondent: <u>Pipefitters Local #597</u>
     EEOC Charge No.: 440-2007-06432

Dear Mr. Brown:

Attached please find a Notice of Right to Sue issued on your behalf in the above referenced matter. The Commission's efforts to conciliate this matter with Respondent have been unsuccessful. The Commission has determined that it will not bring a lawsuit against the Respondent. By issuing the attached Notice of Right to Sue, the Commission is terminating its processing of your charge.

The attached Notice of Right to Sue entitles you to pursue private litigation concerning your allegations against Respondent(s) within 90 days of your receipt of this letter. You may wish to retain a private attorney at this time. The Commission maintains a list of attorneys who have indicated an interest in pursuing cases involving employment discrimination. This list is attached for your convenience.

If you do file suit based on these Notice of Right to Sue, it is requested that you provide us with a copy of the complaints you file in court.

                                  On Behalf of the Commission:

_9/14/12_
Date

                                    John P. Rowe
                                    District Director

Enclosures

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

| | |
|---|---|
| To: Ricky L. Brown<br>2404 Arrowhead Circle, Building 28<br>South Bend, IN 46628 | From: Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2007-06432 | Nanisa Strickler,<br>Enforcement Supervisor | (312) 869-8137 |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

## - NOTICE OF SUIT RIGHTS -
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_John P. Rowe_

**John P. Rowe,**
**District Director**

9/19/12
(Date Mailed)

cc: **PIPEFITTERS LOCAL 597**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
(312) 869-8010
TTY (312) 869-8001
FAX (312) 869-8220

Samuel R. Clark
P.O. Box 191
Wilmington, IL 60481

Re: Respondent:  Pipefitters Local #597
EEOC Charge No.: 210-2005-02862

Dear Mr. Clark:

Attached please find a Notice of Right to Sue issued on your behalf in the above referenced matter. The Commission's efforts to conciliate this matter with Respondent have been unsuccessful. The Commission has determined that it will not bring a lawsuit against the Respondent. By issuing the attached Notice of Right to Sue, the Commission is terminating its processing of your charge.

The attached Notice of Right to Sue entitles you to pursue private litigation concerning your allegations against Respondent(s) within 90 days of your receipt of this letter. You may wish to retain a private attorney at this time. The Commission maintains a list of attorneys who have indicated an interest in pursuing cases involving employment discrimination. This list is attached for your convenience.

If you do file suit based on these Notice of Right to Sue, it is requested that you provide us with a copy of the complaints you file in court.

On Behalf of the Commission:

_9/14/12_
Date

_John P. Rowe_
John P. Rowe
District Director

Enclosures

EEOC Form 161-A (11/09)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

| | |
|---|---|
| To: **Samuel R. Clark**<br>**P.O. Box 191**<br>**Wilmington, IL 60481** | From: **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2000**<br>**Chicago, IL 60661** |

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **210-2005-02862** | **Nanisa Strickler,**<br>**Enforcement Supervisor** | **(312) 869-8137** |

## TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

## - NOTICE OF SUIT RIGHTS -
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*John P. Rowe* 9/14/12

**John P. Rowe,**
**District Director**

*(Date Mailed)*

cc: **PIPEFITTER LOCAL 597**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE
*(CONCILIATION FAILURE)*

To: Frank O. Craddieth
701 South 23rd Avenue
Bellwood, IL 60104

From: **Chicago District Office**
**500 West Madison St**
**Suite 2000**
**Chicago, IL 60661**

[ ] *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210-2004-01080 | **Nanisa Strickler,**<br>**Enforcement Supervisor** | **(312) 869-8137** |

**TO THE PERSON AGGRIEVED:**

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*John P. Rowe,*
*District Director*

9/14/10

*(Date Mailed)*

cc: **PIPEFITTERS LOCAL 597**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
(312) 869-8010
TTY (312) 869-8001
FAX (312) 869-8220

Donald Gayles
12500 South Lincoln Street, Apt. 10
Calumet Park, IL 60827

Re: Respondent: <u>Pipefitters Local #597</u>
EEOC Charge No.: 210-2004-04707 AMENDED

Dear Mr. Gayles:

Attached please find a Notice of Right to Sue issued on your behalf in the above referenced matter. The Commission's efforts to conciliate this matter with Respondent have been unsuccessful. The Commission has determined that it will not bring a lawsuit against the Respondent. By issuing the attached Notice of Right to Sue, the Commission is terminating its processing of your charge.

The attached Notice of Right to Sue entitles you to pursue private litigation concerning your allegations against Respondent(s) within 90 days of your receipt of this letter. You may wish to retain a private attorney at this time. The Commission maintains a list of attorneys who have indicated an interest in pursuing cases involving employment discrimination. This list is attached for your convenience.

If you do file suit based on these Notice of Right to Sue, it is requested that you provide us with a copy of the complaints you file in court.

On Behalf of the Commission:

_9/14/12_
Date

John P. Rowe
District Director

Enclosures

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

| To: | Donald Gayles<br>12500 South Lincoln Street, Apt. 10<br>Calumet Park, IL 60827 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| 210-2004-04707<br>AMENDED | Nanisa Strickler,<br>Enforcement Supervisor | (312) 869-8137 |

## TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

## - NOTICE OF SUIT RIGHTS -
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_____
John P. Rowe,
**District Director**

9/14/12
(Date Mailed)

cc: **PIPEFITTERS LOCAL #597**

RECEIVED EEOC

SEP 2 5 2012

CHICAGO DISTRICT OFFICE



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Chicago District Office

500 West Madison Street, Suite 2000
Chicago, IL 60661
(312) 869-8010
TTY (312) 869-8001
FAX (312) 869-8220

Steve M. Wilson
827 Becker Street
Hammond, IN 46320

Re: Respondent: Pipefitters Local #597
EEOC Charge No.: 210-2005-02858

Dear Mr. Wilson:

Attached please find a Notice of Right to Sue issued on your behalf in the above referenced matter. The Commission's efforts to conciliate this matter with Respondent have been unsuccessful. The Commission has determined that it will not bring a lawsuit against the Respondent. By issuing the attached Notice of Right to Sue, the Commission is terminating its processing of your charge.

The attached Notice of Right to Sue entitles you to pursue private litigation concerning your allegations against Respondent(s) within 90 days of your receipt of this letter. You may wish to retain a private attorney at this time. The Commission maintains a list of attorneys who have indicated an interest in pursuing cases involving employment discrimination. This list is attached for your convenience.

If you do file suit based on these Notice of Right to Sue, it is requested that you provide us with a copy of the complaints you file in court.

On Behalf of the Commission:

_9/14/12_
Date

John P. Rowe
District Director

Enclosures

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE
## (CONCILIATION FAILURE)

| | | | |
|---|---|---|---|
| To: | Steve M. Wilson<br>827 Becker Street<br>Hammond, IN 46320 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210-2005-02858 | Nanisa Strickler,<br>Enforcement Supervisor | (312) 869-8137 |

**TO THE PERSON AGGRIEVED:**

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

## - NOTICE OF SUIT RIGHTS -
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*John P. Rowe*

**John P. Rowe,**
**District Director**

9/14/12

*(Date Mailed)*

cc: **PIPEFITTERS LOCAL 597**