UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DUANE PORTER, *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
|   v. | )   Case No. 12-cv-9844 |
| | ) |
| PIPEFITTERS ASSOCIATION LOCAL | )   Judge John W. Darrah |
| UNION 597, U.A., and | ) |
| MECHANICAL CONTRACTORS | ) |
| ASSOCIATION OF CHICAGO, | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, individually and on behalf of a putative class, have filed a seven-count Complaint against Defendant Pipefitters Association Local Union 597, U.A. ("Local 597") for race discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e, *et seq*. (Counts I, II and III), and for violation of Section 301 of the Labor Management Relations Act of 1947, 28 U.S.C. § 185(a) (Count VII); and against Local 597 and Defendant Mechanical Contractors Association of Chicago ("MCA") for race discrimination, retaliation and conspiracy, in violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1985(3) (Count IV, V and VI ). Local 597 and MCA have filed Motions to Dismiss certain counts of the Complaint and a Joint 12(f) Motion to Strike.

**BACKGROUND**

Plaintiffs are black pipefitters and are current or former union members of Local 597. (Compl. ¶ 185.) Local 597 is the largest local union within the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, is headquartered in Chicago, and currently has approximately 6,750 active members, about 215 of whom are black.

(*Id.* ¶ 1.) MCA is a professional association representing Chicago-area contractors and is headquartered in Burr Ridge, Illinois. (*Id.* ¶ 2.) MCA and Local 597 are parties to a contract that requires MCA members to employ only pipefitters who are members of Local 597. (*Id.* ¶ 3.)

Plaintiffs' very lengthy Complaint details racial discrimination against black union workers going back to the 1800s. (*See generally* Compl.) Plaintiffs describe previous litigation against Local 597 for discrimination and how, in or around 1993, Local 597 was required to implement a "hiring hall" system, according to the terms of a consent decree. (Compl. ¶¶ 79-80.) Plaintiffs allege that after the consent decree was entered, Defendants conspired to discriminate against black pipefitters by keeping them out of the hiring hall and referral hall policies. (*Id.* ¶¶ 242-248.) Specifically, Plaintiffs allege that Defendants conducted contractual negotiations in 2005 that altered the hiring hall system and returned to a previous arrangement, known as a "telefitter system," that had been declared illegal in the previous litigation. (*Id.* ¶¶ 95, 98.) On January 1, 2006, Defendants finalized their agreement and set up a hiring system by which 75 percent of all hires are made "directly by the employer" and without union participation; and the remaining 25 percent of the hires are made via a "referral hall," which is run according to the Local 597 Referral Hall Rules of Operation. (*Id.* ¶¶ 97-98.) Plaintiffs allege that this agreement has a discriminatory effect on black pipefitters that continues to today. (*Id.* ¶¶ 96, 112-118.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. County of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice

of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id*. While a court is to accept all allegations contained in a complaint as true, this principle does not extend to legal conclusions. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To defeat a Rule 12(b)(6) motion, a plaintiff must plead facts sufficient to state a claim for relief that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A defendant may assert a statute of limitations defense in a Rule 12(b)(6) motion to dismiss where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005); *see also Tamayo*, 526 F.3d at 1086 ("a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims").

## ANALYSIS

*Motion to Dismiss Counts IV, V and VI*

MCA has moved to dismiss Counts IV, V and VI for failure to state a claim. Local 597 has moved to dismiss Count VI only. Count IV alleges racial discrimination in violation of Section 1981; Count V alleges retaliation in violation of Section 1981; and Count VI alleges conspiracy in violation of Section 1985(3).

*Count IV*

In Count IV, Plaintiffs allege that Local 597 and MCA violated 42 U.S.C. § 1981. Section 1981 addresses racial discrimination in contractual relationships and provides:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . .
> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
> (c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981(a)-(c). In order to state a discrimination claim under Section 1981, the plaintiff must sufficiently allege the following: (1) he is a racial minority; (2) the defendant possessed an intent to discriminate on the basis of race; and (3) the discrimination "concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract)." *Morris v. Office Max*, 89 F.3d 411, 413 (7th Cir. 1996); *see also* 42 U.S.C. § 1981(a)-(c).

The Supreme Court has explained that Section 1981 protects against racial discrimination that "blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006); *see also Smiley v. Columbia College Chicago*, 714 F.3d 998, 1002 (7th Cir. 2013) ("Section 1981 prohibits race discrimination in the making and forming of contracts."). "Any § 1981 claim, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." *Domino's Pizza*, 546 U.S. at 476.

In this case, Plaintiffs have not sufficiently identified an impaired contractual relationship to give MCA fair notice of their Section 1981 claim. *See Tamayo*, 526 F.3d at 1081. They do not allege that they had a contract with MCA. They also do not allege that MCA blocked the creation of, or impaired, Plaintiffs' contractual relationships. *Domino's Pizza, Inc.*, 546 U.S. at 476. Rather, they generally allege that MCA and Local 597 denied them the benefits of employment. It is unclear from the Complaint whether Plaintiffs are referring to contracts with potential employers or to the contract between MCA and Local 597 or to Plaintiffs' union contract with Local 597.

Furthermore, and perhaps tellingly, Plaintiffs do not allege in Count IV that MCA intentionally discriminated against Plaintiffs; rather, Plaintiffs allege only that Local 597 intentionally discriminated against them. (*See* Compl. ¶ 230.) Plaintiffs have failed to state a Section 1981 claim against MCA. Count IV is dismissed without prejudice as to MCA.

*Count V*

In Count V, Plaintiffs allege that MCA and Local 597 retaliated against them when Plaintiffs opposed Local 597's unlawful conduct by filing internal grievances and proceedings with the National Labor Relations Board and the EEOC. (Compl. ¶ 236.)

Section 1981 prohibits retaliation for "opposing discriminatory practices that the statute[] proscribe[s]." *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir. 2011). In other words, Section 1981 prohibits a defendant from taking adverse action against a plaintiff who has opposed the defendant's impairment of a contractual relationship on discriminatory grounds. *See Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) ("[U]nlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination.").

Plaintiffs' Section 1981 retaliation claim against MCA fails for the same reasons discussed above. Again, Plaintiffs have failed to identify a contractual relationship that MCA interfered with. (*See* Compl. ¶ 235.) Plaintiffs also have failed to allege that MCA intentionally discriminated against Plaintiffs. (*Id.* ¶ 239.) Furthermore, Plaintiffs' retaliation claim against MCA fails for the separate reason that Plaintiffs have failed to identify any retaliation, or adverse action, that MCA took against Plaintiffs. Instead, Plaintiffs allege only generally that "defendants retaliated against the plaintiffs by withholding access to jobs and other benefits." (*Id.* ¶ 239.) Such a legal conclusion is not sufficient to state a claim. Count V is dismissed without prejudice with respect to MCA.

*Count VI*

In Count VI, Plaintiffs assert a claim against Defendants for conspiracy under 42 U.S.C. § 1985. Both Defendants argue that Count VI of the Complaint should be dismissed under Rule 12(b)(6) as time-barred under the Illinois two-year statute of limitations for personal injury claims.[1] Plaintiffs respond that Defendants have incorrectly analyzed the statute of limitations and that the federal four-year statute of limitations applies because the underlying tort is Plaintiffs' Section 1981 claims (contained in Counts IV and V).

The issue of which statute of limitations applies to federal civil rights claims is a complex one and deserves more attention than the relatively brief treatment given to it by the parties. Defendants are correct that the Illinois two-year statute of limitations applies to certain federal civil rights actions, such as Section 1983 actions, and, in appropriate circumstances, it can apply

---

[1] MCA also raises a statute of limitations defense in support of its Motion to Dismiss Court IV. However, in light of the Court's dismissal of that Count for other reasons, this issue will not be addressed.

to Section 1985 conspiracy claims. *See, e.g.*, *Kness v. Grimm*, 761 F. Supp. 513, 517 (N.D. Ill. 1990) (applying Illinois two-year limitations period to Sections 1983 and 1985 claims). However, in Illinois, a conspiracy claim is governed by the statute of limitations for the underlying tort. *See Mauvais-Jarvis v. Wong*, 987 N.E.2d 864, 894 (Ill. App. Ct. 2013) ("It is well-settled that conspiracy, standing alone, is not a separate and distinct tort in Illinois . . . . [I]t is logical that a conspiracy claim itself be governed by the statute of limitations for the underlying tort"); *see also* 15 C.J.S. Conspiracy § 26, at 1043 (2013) ("The statute of limitations for a civil-conspiracy claim is determined by the nature of the underlying conduct on which the claim of conspiracy is based."). Consequently, it must be determined which statute of limitations applies to Plaintiffs' Section 1981 claim underlying Plaintiffs' Section 1985 conspiracy claim.

28 U.S.C. § 1658, the federal four-year "catch-all" statute of limitations, applies to any claim "arising under" an act of Congress that was enacted after December 1, 1990. In *Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 384 (2004), the Supreme Court held that Section 1658, and not the state statute of limitations, applied to the Section 1981 hostile work environment, wrongful termination and failure to transfer claims in that suit. The Court reasoned that Section 1658 governed the Section 1981 claims at issue because the claims arose under the 1991 Civil Rights Act, which had amended the prior version of Section 1981 to include "termination of contracts and the enjoyment of benefits, privileges, terms, and conditions of the

contractual relationship."[2] *Id.* The Court distinguished between Section 1981 claims that arose from the 1991 Civil Rights Act and those Section 1981 claims that were based on the pre-1990 version of Section 1981, which continue to be subject to the "borrowed" state statute of limitations. *Id.* at 382-85.

In *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 269 (7th Cir. 2004), the Seventh Circuit, following *Jones*, held that Section 1658 applied to the plaintiff's Section 1981 claims because the claims were "premised on conduct which took place after the formation of her employment contract." Since *Jones* and *Dandy*, the courts in this circuit have continued to draw a line for purposes of the statute of limitations between § 1981 claims that arise from the pre-1990 Section 1981 ("preexisting claims") and those claims that arise from the 1991 Civil Rights Act. For example, in *Bardney v. Chicago Housing Authority*, No. 11 C 8628, 2013 WL 1278526, at *3 (N.D. Ill. Mar. 28, 2013), the court held that the plaintiff's Section 1981 claim for discrimination was subject to the four-year statute of limitations under Section 1658 because the claim related to discrimination after the formation of a contract and thus fell under the 1991 amendment. *Id.* The court explained that the plaintiff's "claim does not directly concern his ability to enter into a contractual relationship, but relates to his ability to enjoy the benefits of his contractual relationship with the defendants." *Id.* at *3n5.

---

[2] The Civil Rights Act of 1991 was a response to the Supreme Court's ruling in *Patterson v. McLean Credit Union*, 491 U.S. 164, 179 (1989). In *Patterson*, the Supreme Court held that § 1981's statutory protection "to make and enforce contracts" did not protect against workplace harassment that occurred *after* the contract was formed. 491 U.S. at 179. With the Civil Rights Act of 1991, Congress amended § 1981 to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b); *see also Domino's Pizza, Inc.*, 546 U.S. at 477. Consequently, the amended § 1981 prohibits discriminatory harassment occurring after the employment contract.

Put differently, if a Section 1981 claim involves the making or enforcement of contracts, it is a pre-1990 Section 1981 claim, and the state statute of limitations applies (which, in Illinois, is two years). If, however, the Section 1981 claim involves conduct that occurs after the employment contract is formed, it is subject to Section 1658's four-year statute of limitations. *See, e.g., Walton v. Diamond*, No. 12-cv-4493, 2013 WL 1337334, at *5 (N.D. Ill. Mar. 29, 2013) ("claims brought under the pre-1990 version of Section 1981, which involve the making or enforcement of contracts, are subject to the statute of limitations for personal injury actions."); *Flowers v. Carbondale Elementary School Dist.*, No. 09-827-GPM, 2010 WL 3942447, at *2 (S.D. Ill. Oct. 06, 2010) (holding that plaintiff's failure to hire claim "which explicitly involves the 'making and enforcement of employment contracts' – is governed by the Illinois two-year statute of limitations period for personal injury claims."); *Gee v. Metaldyne Corp.*, No. 1:08-CV-0097DFHJMS, 2008 WL 4936865, at *5 (S.D. Ind. Nov. 14, 2008) ("Under *Jones*, the issue is whether [plaintiff's] claims arose under the post-1990 amendment to § 1981 or whether they were preexisting.").

In Counts IV and V, Plaintiffs allege that Defendants violated Section 1981 by denying Plaintiffs the benefits or privileges of their employment on the basis of their race and by retaliating against them for filing grievances about racial discrimination. As discussed above, Plaintiffs have not sufficiently alleged which employment contracts Defendants allegedly interfered with. If Plaintiffs are claiming that Defendants interfered with contracts with potential employers – *i.e.*, the making or enforcing of employment contracts – then a two-year statute of limitations would apply. However, if Plaintiffs are claiming that Defendants interfered with an existing employment contract, or some other type of contract, then a four-year statute of limitations applies. Until Plaintiffs address this threshold question by amending their allegations,

9

they have not provided Defendants with fair notice of their claim. Furthermore, the proper statute of limitations cannot be analyzed.[3] Consequently, Count VI is dismissed without prejudice with respect to both Local 597 and MCA.

*Joint Motion to Strike Allegations and Exhibit D from the Complaint*

Pursuant to Rule 12(f), Defendants jointly move to strike as immaterial, impertinent and scandalous the following from the Complaint: (1) the allegations contained in paragraphs 19 through 90 and (2) Exhibit D, which is the "Memorandum Opinion of Special Master" from case number 84 C 5224, *Daniels v. Pipefitters Association Local Union 597*, dated June 24, 1993. This same Special Master's Opinion was struck as irrelevant by Judge Holderman in September 2012, in a separate lawsuit brought by another pipefitter, who was represented by the same counsel as in this case, against Local 597. (*See Moore v. Pipefitters Ass'n Local Union 597, U.A.*, No. 10-cv-7376, Dkt. # 108.)

Defendants' Motion to Strike is granted. In paragraph 19 through 90, Plaintiffs detail racial discrimination against black pipefitters starting in the 1800s and continuing through the *Daniels* litigation in the 1990s. Exhibit D is a 60-page opinion from the special master in the

---

[3] Plaintiffs argue that their Section 1981 and Section 1985 claims are timely under the equitable continuing violation doctrine because the alleged discrimination continues and every time a black pipefitter is disadvantaged or denied a job, a new violation occurs. MCA responds that Plaintiffs misunderstand the continuing violation doctrine and that, under Supreme Court precedent, the statute of limitations runs from the date of the adoption of the CBA, which was in 2006. MCA cites to *Lorance v. AT&T Technologies*, 490 U.S. 900, 907 (1981), in which the Supreme Court reiterated its holding that the "focus is upon the time of the *discriminatory* acts, not upon the time at which the *consequences* of the acts became the most painful." (Emphasis in original) (internal quotations and citations omitted). As MCA notes, *Lorance*'s specific holding has been abrogated by statute, 42 U.S.C. § 2000e-5(e)(2), with respect to the statute of limitations for Title VII actions; however, MCA argues it remains controlling for Section 1981 or 1985 claims. Indeed, the Seventh Circuit has recognized that *Lorance*'s "reasoning remains persuasive outside of the Title VII/intentionally discriminatory seniority system context." *Huels v. Exxon Coal USA*, 121 F.3d 1047, 1050n.1 (7th Cir. 1997).

*Daniels* litigation; the consent decree in that case expired over sixteen years ago in 1996. As reflected in paragraph 91 of the Complaint, the earliest filed EEOC charge by any Plaintiff in this litigation was May 2004. As such, Plaintiffs' claims can only encompass conduct occurring 300 days prior to the filing of that charge. Plaintiffs' lengthy recounting of racial discrimination going back over a century is irrelevant to their claims as well as impertinent and inflammatory. As such, allegations 19 through 90 and Exhibit D are struck from the Complaint.

## CONCLUSION

MCA's Motion to Dismiss Counts IV, V and VI of Plaintiff's Complaint [22] and Local 597's Motion to Dismiss Count VI [27] are granted. Count VI is dismissed without prejudice with respect to Local 597 and MCA. Counts IV and V are dismissed without prejudice as to MCA. Defendants' Joint Motion to strike Allegations and Exhibit D from the Complaint [24] is also granted; allegations 19 through 90 and Exhibit D are struck from the Complaint. Plaintiffs are granted leave to amend their allegations, in accordance with Rule 11, within thirty days of this Order.

Date: September 12, 2013

JOHN W. DARRAH
United States District Court Judge